BABB *vs.* MACKEY.

APPEAL FROM CIRCUIT COURT, SAUK COUNTY.

Heard September 21, 1859.]                    [Decided January 4, 1860.

*Former Suit—Pleadings—Mills and Mill Dams—Constitutional Law.*

What effect will be given to a decree dismissing a bill in equity on the plaintiff's motion, or on the application of the defendant for want of prosecution, when such decree is set up in bar to a subsequent suit at law for the same cause of action between the same parties.  Quere.

To a plea in bar, that a bill had been filed in equity for the same cause of action, that a feigned issue had been tried and verdict found for the defendant, and that after verdict the plaintiff's bill had been dismissed, the plaintiff replied that the bill was dismissed on his motion, upon his paying the costs to be taxed; but did not aver that the costs were taxed or paid; this was a material defect, and the replication was demurrable for want of such averment.

Where an action is several in its nature, so that there may be a different defense to each of the parts.  The plea which answers but one of the parts, is not bad because it does not answer the whole of the declaration or count containing the separate parts of the cause of action.  One of the parts may be answered in one plea, and others in another.

Babb vs. Mackey.

The spirit of the code, § 10, sub. 4, as well as condusiveness to justice, require part-
ies to apprise each other of the precise grounds upon which they rely.

The act of February 26, 1858, authorizing the construction of a dam across the
Baraboo River, at Reedsburg, is sustained as constitutional, in accordance with
the decisions upon the mill dam law.

The case of *Newcomb vs. Smith*, 1 Chand. 71, considered and followed.

This action was brought by James W. Babb against Joseph
Mackey, for damages sustained by the plaintiff, by reason of
building and maintaining a dam across the Baraboo River
by the defendant, whereby the lands of the plaintiff were
overflowed, and greatly injured, and a mill site on the plain-
tiff's land was destroyed. To this declaration the defendant
pleaded three pleas: 1. General issue. 2. The proceedings
in the case of *James W. Babb vs. David C. Reed*, in equity,
concerning the same matter, and the dismissal of the bill
after the verdict on the feigned issue found against the plain-
tiff; the dismissal of the bill, and that defendant is the grantee
of Reed. 3. The act of February 26, 1856, entitled an act to
authorize Joseph Mackey, &c., to build and maintain a dam
across the Baraboo River at this point.

The plaintiff replied to the second plea of the defendant,
that the bill in chancery was filed to compel Reed to lower
his dam, and that the bill was dismissed by the complainant
on leave granted, and on payment of costs. The plaintiff de-
murred to the third plea of the defendant. The defendant
demurred to the replication of the plaintiff to the second plea.
The court below sustained the demurrer of the plaintiff to the
third plea, and overruled the demurrer to the replication, from
which the defendant appealed.

*J. Mackey*, in person, for the appeal, in support of the de-
murrer to the replication, cited *Ogsburg vs La Farge*, 2 Com.,
113; 11 Petersdorf Ab., 708; 1 Barb. Ch. R., 455 to 400; 1
Philips Ev., 389, and note 729; *Feller vs. Mullener*, 2 John.,
181; 8 Paige, 81; 1 Chitty's Pl., 521 to 4; *Root vs. Wood-
ruff*, 6 Hill, 416; 16 N. Y., 308.

On the constitutionality of the act recited in his plea he re-
lied on the same authorities as are cited in *Fisher vs. Hori-
con Iron & Man. Co., supra*, 351.

*Alvah Stewart & S. U. Pinney*, for the respondent, in sup-
port of the replication to the second plea, cited the following:
*State ex rel. Kane vs. Larabee*, 3 Chand., 179; *Cummins vs.*

*Bennett,* 8 Paige, 78 ; *Simpson vs. Brewster,* 9 Paige, 245 ; Story Eq. Plead, § 1, 793 ; *Jenkins vs. Bell,* 2 Rich., 144 ; *Rosse vs. Rust,* 4 J. C., 299.

The second plea is not good, as it does not answer the whole declaration. It only sets up matters in answer to so much as relates to the mill site claimed by the plaintiff, and does not set up any defense to the injury done to the plaintiff's land by overflowing it with water, as alleged in the declaration. *Willmarth vs. Babcock,* 2 Hill, 194; *Boyd vs. Weeks,* 5 id., 395; *Root vs. Woodruff,* 6 id., 418; *Merceiw vs. Smith,* 2 id., 210; *Matthewson vs. Weller,* 3 Denio, 52; *Haliday vs. Noble,* 1 Barb., 138.

They also discussed the question of the constitutionality of the mill dam act, denying its validity, and citing a large number of authorities.

*By the Court,* COLE J. The authorities are not very clear as to what effect should be given to a decree dismissing a bill in chancery, on the plaintiff's motion, after verdict on a feigned issue in favor of the defendant. The general proposition is laid down in the books that the plaintiff may move to dismiss his own bill with costs, as a matter of course, at any time before the decree. 2 Danl., Ch. Pr., 929; *Perine vs. Swain,* 2 J. C. R., 475; *Cummins vs. Bennett,* 8 Paige 79. But what effect will be given to a decree dismissing a bill on plaintiff's motion, or on application of defendant for want of prosecution, when such decree is set up in bar to a subsequent suit for the same cause of action between the same parties, is not so well settled.

In the case of *Rosse et al. vs. Rust et al.,* 4 J. C. R., 299; where a cause had been set down for hearing on bill and answer, and the bill had been dismissed with costs, because no person appeared for the plaintiff, and the decree was enrolled, the decree was held to be no bar to another suit for the same matter. Chancellor Kent declared that because the merits of the former cause was never discussed, and no opinion of

the court ever expressed upon them, it did not come within the rule rendering the decree a bar to a new suit. See also *Broadlyn vs. Ord*, 1 Atk., 571; Mitford's Pleadings, 237, and cases cited in the notes; *State ex rel. Kane vs. Larabee*, 3 Chand., 179; *Bryne vs. Frere*, 2 Molloy, 157; same case in 12 Eng., Ch. R. 391.

In *Carrington vs. Hally*, 1 Dickens, 280, Lord Hardwick intimated, very clearly, that where an issue had been tried, and a verdict in favor of the defendant, that the plaintiff could not dismiss the bill on his own motion, upon payment of costs, since the defendant might set the cause down on the equity reserved, in order to have the bill dismissed upon the judgment of the court, so as to make the order of dismission pleadable. And the court of appeals in New York went further, and decided in *Ogsburg vs. La Farge*, 2 Comst., 113, that a decree of a court of chancery, dismissing the bill where no one appeared for the plaintiff, and the cause had been set down for hearing after replication, and an order closing the proofs, was a bar to a subsequent suit for the same cause between the same parties, although no proofs were in fact taken. Judge Bronson was disposed to follow the case of *Rosse vs. Rust*, and held that because no proof had been taken, and the bill dismissed in consequence of the default of the plaintiff to appear at the hearing, that it was not a bar.

Without stopping to examine these authorities for the purpose of determining whether the decree set forth, in the first special plea and replication thereto in this case, is in its nature final or not, we are clearly of the opinion that the replication to this plea is defective, for the following reasons: For the purpose of avoiding the effect of the matters set up in the first special plea, the respondent replied, that on motion of his solicitor to dismiss the bill, it was ordered that leave to dismiss the same be granted accordingly, and that

the bill be dismissed, upon the complainant's paying to the defendant his costs in the suit to be taxed; but there is no averment in the replication that such costs were ever taxed and paid by the plaintiff. The order was a conditional one, and the suit was not absolutely out of court until the costs were paid to the defendant. *Cummins vs. Bennett*, 8 Paige, 79; *Simpson vs. Brewster*, 9 id., 245. The plaintiff wished to show by the replication that the merits of the chancery cause were never discussed and passed upon by the court, but that the bill had been dismissed, upon his motion, before final decree, and therefore, that the former suit mentioned in the plea was no bar. He set forth an order in which leave was granted him to dismiss his bill upon certain conditions, but he did not allege that he had complied with the condition which rendered the order efficacious. This was a material defect in the replication, and the demurrer to it, therefore, should have been sustained.

But it is insisted that the second plea was not good, as it did not answer the whole declaration, and as the demurrer to the replication reached back to this defective plea, it should have been sustained upon that ground. It is, undoubtedly the rule, that upon the argument of a demurrer, the court will, notwithstanding the defect of the pleading, demurred to, give judgment against the party, whose pleading was first defective in substance. We are, therefore, to consider whether the objection to the second plea is well taken.

The action was for damages done the respondent's land, by overflowing it with water, and also for destroying a mill site. It is manifest that the injury complained of is severable in its nature, as the appellant may have overflowed the land and seriously damaged it, without infringing any mill site. The second special plea professes to answer so much of the action as claims damages for destroying the mill

site; while the matters of defense set up in the third special plea, as well as the general issue pleaded, covers the entire cause of action.  By the New York rule, this would undoubtedly be bad pleading.  *Root vs. Woodruff*, 6 Hill, 418, and cases there cited.  Judge Bronson, in delivering the opinion of the court in *Root vs. Woodruff*, says: "But as I understand the rule in England, the plea need not go to the whole count, if their be other pleas which cover the residue; thus, in trespass for breaking the plaintiff's close, and seizing and carrying away his goods, the defendant, after pleading not guilty as to the whole, may, by another, plea justify the entry into the close, without saying any thing about the goods; or he may justify as to the taking of the goods, without mentioning the entry into the close.  And without pleading any one plea going to the whole count, the defendant may, by one plea, justify the breaking of the whole close, and by another the seizing of the goods.  It is enough that each plea is good as far as it goes, and that all of the pleas taken together cover the whole count."  As a consequence of the rule denying the right of pleading partial defenses, the New York courts let the matter in by way of evidence, without such plea.  *Willmarth vs. Babcock*, 2 Hill, 194.

In 1 Chitty Pleas, 524, the rule is stated that, "If a plea begins only as an answer to part, and is in truth but an answer to part; as if the defendant in trespass for taking two sheep, plead that the plaintiff ought not to have his action as to one, because he took that one doing damage on his close, &c., and does not in that, or any other plea, notice the remainder of the declaration, the plaintiff cannot demur to the plea, for it is sufficient as far as it extends, but must take judgment for the part unanswered, as by *nil dicet*."  *The Earl of Manchester vs. Vale*, 1 Saund, 27, and cases cited in the notes.

It would seem to be more conducive to justice to require

the parties to apprise each other of the precise grounds upon which they intend to rely, and such seems to be the spirit of the code, § 10, sub. 4; *McKyning vs. Bull*, 16, N. Y. R., 297. Since the second special plea, while it professes to answer, only a part of the declaration is accompanied with other pleas, which cover the entire cause of action, we have concluded to treat it good for all it assumes to answer.

In the third special plea the appellant set up the proceedings taken by him under chap. 58, Private Laws, 1856, 61, as a full defense to this action. The main objection to this plea is that the act of the legislature is unconstitutional, and therefore, that the proceedings taken under it furnish no justification. In the case of *Fisher vs. The Horicon Iron and Manufacturing Comp., supra,* 351, the constitutional power of the legislature to pass a general mill dam law, was fully discussed, and we were earnestly pressed by counsel, who denied that power, and the validity of our present law, to reconsider the decision of the former supreme court in the case of *Newcomb vs. Smith,* 1 Chand., 71. For reasons given in the opinion in that case, we have declined to depart from the doctrine laid down in *Newcomb vs. Smith,* and consequently the power of the legislature to pass such laws, is not now an open question. The law referred to in the pleadings in this case, authorize the appellant and his assigns to erect and maintain a dam where the one complained of exists, and contains restrictions upon the privileges granted, and securities against the abuse of those privileges not found in the general law upon the subject. Assuming that the general mill dam law is constitutional, it would seem to follow that this is so. By this act, and by chap. 167 Private Laws, 1857, 387, amendatory thereof, the right of the respondent to maintain this action is taken away, and he must pursue his remedy for any damages he has sustained in conformity to those enactments. We do not think either of these laws impairs any

vested right, but merely prescribed the manner in which the respondent shall enforce his remedy. *Reed vs. Frankfort et al.*, 23 Me., R., 321; *Conkey vs. Hart*, 4 Kern., 23; *Thien vs. Vœgtlander*, 3 Wis., 461.

It follows from these views that the order of the circuit court sustaining the demurrer of the respondent, and overruling the demurrer of the appellant, must be reversed, and the case remanded for further proceedings.