## FREEMAN VS. CARPENTER, impleaded with others.

Under the code a plea in abatement may be joined with a defense on the merits.
Where the court erred in refusing to admit evidence under a plea in abatement, on the ground that such a plea could not be joined with one to the merits, the judgment will not be reversed if the evidence offered (and incorporated into the bill of exceptions) was not sufficient to sustain the plea.
On the trial of an action commenced January 22, 1861, where the defendant pleaded the pendency of another action for the same cause, the record in that action showed that it had been remitted to the circuit court from the supreme court for further proceedings, with costs to be paid by the plaintiffs therein; that the remittitur was filed on said 22d of January; and that on the same day the plaintiffs entered a discontinuance. The record stated nothing as to the payment of costs. *Held*, that it must be presumed from the record that everything was done which was necessary to make the discontinuance effectual.
In an action against A, B & C, as partners, on a note made in the firm name for borrowed money, where A answered that the note was made without his knowledge or consent by B for his individual debt, and that B had no authority to borrow money in the name of the firm: *Held*, that if it appeared from a fair construction of the articles of copartnership, that authority was given the several mem-

bers to borrow money for the firm, or if such a power could fairly be implied from the nature and objects of the partnership operations therein provided for, then it would be unnecessary to consider other questions raised upon the evidence, as to the nature of the business advertised or actually done by the firm, the defendant's knowledge of the transaction in question, or the use made of the money for which the note was given.

By articles of copartnership, the parties agreed to engage in the general business of land agents and money and commission brokers; and it was provided that should either furnish more cash capital than the other, he should be allowed a certain rate of interest thereon, and the balance of the profit, if any, should be divided equally, as the other profits; that neither party should draw from the funds of the firm unless there should appear from the books to be funds over and above its liabilities, and in no case should either draw more than $25 per month without the consent of the other; that all moneys belonging to the firm or individuals, when amounting to more than $50, should be deposited in bank; that no moneys belonging either to the firm or individuals should be loaned or paid out without the consent of both the parties to said articles; and that all matters pertaining to the value of securities offered for money should be submitted to both. *Held,* that the business contemplated by these articles included dealing in money, keeping on hand a cash capital, and making loans from it; and each partner had therefore power to borrow money in the name of the firm.

APPEAL from the Circuit Court for *Dane* County.

Action, commenced January 22, 1861, on a promissory note dated April 2, 1857, payable to the order of L. L. Foote, signed "*Carpenter, Noyes & Co.*" The complaint alleges that on the day of said date the defendants were partners, doing business under the name of *Carpenter, Noyes & Co.*, and made the note in suit; that afterwards it was indorsed by the payee to the plaintiff, &c. *Carpenter* answered, admitting the partnership, but denying that said note was made to secure the debt or liability of himself or of said firm, or with his knowledge or consent, or for his or their advantage, or in the transaction of the firm business; but alleging that it was made in fraud of his rights, to secure the individual debt of *Noyes,* and that this was done with the knowledge of the payee. The answer further alleges the pendency, in said circuit court, of another action on the same note, against the same defendants, brought by the payee jointly with her husband. The other defendants did not answer.

On the trial, after the plaintiff had introduced the note in evidence, and rested, the defendant *Carpenter* moved for a nonsuit, which was denied. Defendant then offered in evidence the record of the action referred to in his plea in abatement. It appears from said record that a judgment for the plaintiffs in that action was reversed on appeal, with costs to be taxed against said plaintiffs, and the cause remanded to the circuit court for further proceedings; that the remittitur was filed in the circuit court January 22, 1861; and that on the same day the plaintiffs' counsel caused an entry to be made of record that they thereby discontinued the action. An objection by the plaintiff to the admission of this record in evidence, was sustained by the court.

*Mr. Carpenter* as a witness in his own behalf, testified that the partnership between himself and the other defendants was formed about the 1st of August, 1856, and continued until May or June, 1857. *Question.* "In what business was the firm engaged at about the 2d of April, 1857?" Objection sustained.—"The general and only business the firm did was a land agency and money broker business, on commission. The whole business was an agency business." *Question:* "What sort of business did they do as land agents?" Objection sustained. *Question:* "State whether the firm bought or sold lands or dealt in lands except as agents." Objection sustained, —"At and previous to the 2d of April, 1857, the firm had an advertisement of its business published in both the daily and weekly edition of the '*Patriot*,' a newspaper published at Madison, and which circulated generally in this city and throughout the state. Charles Foote, the husband of the payee of the note, took the paper. His wife lived with him. The advertisement was as follows: 'CARPENTER, NOYES & Co., Real Estate and Loan Agents, and Money Brokers * * Will buy and sell real estate, invest money, and negotiate loans for non-residents and others, pay taxes, collect rents, or any other dues, at reasonable commission; locate land warrants,

buy and sell the same on commission, examine and perfect titles, insure life and property in responsible companies, &c. Land warrants located in this and adjoining states and territories. We have some choice selections of government lands now surveyed, which we are locating for our customers at short notice, through our agent at the land office.' [Signed by the defendants.] There was a large board up in the office having on it the words 'Land Agency.' There were cards posted up in the office having on them this advertisement. I was acquainted generally with the business of the firm; had a knowledge of the transactions in which it was interested. The money for which the note was given was not received by the firm or used in its business." *Question:* "Did you know of the giving of the note, or ever sanction it?" Objection sustained.—On cross-examination the witness stated that the articles of partnership between himself and the other defendants were in writing, and produced them, and they were given in evidence. Those portions of them which bear upon the question decided in this case are recited in the opinion of the court. The witness continued: "I had no personal knowledge as to the consideration of the note. The firm kept books; the last I knew of them they were in *Noyes's* hands; think they had no blank note-book."

William Brooks, called by the plaintiff, testified as follows: "From February until September, 1857, I was clerk for *Carpenter, Noyes & Co.* The partnership was dissolved about the 1st of August. I kept the books; there was a day-book and ledger, and a book of bills payable and receivable, containing blanks." *Question:* "Was the firm in the habit of giving notes?" Objection by defendant overruled. *Answer:* "They gave notes; they gave several every week; they gave notes to raise money; they borrowed money and loaned it to others, and bought land; they gave judgment notes; notes were usually signed by *Carpenter, Noyes & Co.*; it is my strong impression that they gave judgment notes." *Question:* "Were the

transactions which you have stated entered on the company's books?" Objection by the defendant, on the ground that the books would be the best evidence, overruled. *Answer:* "These transactions were entered on the books; I mean the transactions of borrowing and receiving money, &c.; it is set forth in the advertisement; they bought and sold land in their own names, and borrowed money, and paid taxes, rented property, and paid interest. *Noyes* was the active man of the firm; he signed the notes and did the business; recollect that Foote loaned money to *Noyes* and took a note; this was one of the notes that they kept; the money was loaned to *Carpenter, Noyes & Co.*, and was so understood by Foote; this transaction was done the same way with all the partnership business, and in the company's office. I saw the books in the possession of Wakeley & Tenney in September, 1857; that is the last I have seen of them; these books were open to all the members of the firm; all the transactions went on to the books, and I think this did." On cross-examination, the witness said: "*Noyes* gave all the company notes; from my knowledge of the course of business, my strong impression is that the money went into the firm safe with other firm money; cannot tell the names of parties who loaned them money; it was to [?] many about town on short times; I know of a great many instances of this kind. They bought school land for others, and also on their own account; I don't recollect any particular instance where the transaction was entered on the books of profits and losses of school lands; don't know of any particular instance where money was loaned to the firm, and the company's note given, or school lands purchased by the firm, with *Carpenter's* consent or knowledge. I never heard *Carpenter* object to anything the firm was doing, until late in the history of the firm."

D. K. Tenney, as witness for the plaintiff, testified that he had loaned money to the firm of *Carpenter, Noyes & Co.*; that the note for it was given in the firm name; knew that *Noyes*

bought school lands, but did not know whether they were bought in the name of the firm.

*Mr. Carpenter*, recalled in his own behalf, testified that the company never gave a note except the one mentioned by Mr. Tenney. *Question:* "What were the circumstances under which the note spoken of by Mr. Tenney was given?" Objection by the plaintiff sustained.

The defendant asked the court to give the jury the following instructions, which were severally refused: " 1st. If the business carried on by *Carpenter, Noyes & Co.* was that of land agents and money and commission brokers, and the note sued on in this case was given without the knowledge and consent of the defendant *Carpenter*, he is not liable on the note by reason of being a member of the firm; nor unless the plaintiff has shown expressly that the consideration of the note was furnished to the firm for its use and benefit, in the ordinary business of the firm. 2. The proper business of land agents and money and commission brokers is a mere agency business, and does not embrace purchases and sales of property, or the borrowing of money, on account of, or for the use of the firm. 3d. A member of the firm of *Carpenter, Noyes & Co.* could not bind the firm by a note given in their name, without their knowledge and consent, for borrowed money, unless borrowed to defray the ordinary expenses of the firm, incurred in its business, unless the jury find that the business properly carried on by the firm necessarily required the borrowing of money on account of the firm for purposes other than defraying such ordinary expenses, and the money was borrowed for such purpose. 4th. If any business was transacted in the name of the firm aside from that specified in the articles of copartnership, and in the advertisement in evidence, the defendant *Carpenter* is not liable on the note in question, if given without his knowledge and consent, in such business not so specified, unless he knew of and sanctioned the transaction of such business. 5th. If the copartnership of *Carpenter, Noyes &*

*Co.* was engaged in business as agents acting for a commission, one member of the firm could not, without the consent of the others, purchase any article whatever for the purpose of trade or speculation, or borrow money for that purpose, and bind such other members by giving notes signed by the firm name, and such consent must be shown in some other way than by the fact of the existence of the copartnership.    6th. The business authorized to be done by the firm of *Carpenter, Noyes & Co.*, according to the articles of copartnership and the advertisement which are in evidence, did not give the power to any member of the firm to bind the firm by a note given in its name for borrowed money, without its consent.    7th. If the note in controversy was given for borrowed money, the plaintiff, having obtained it after it was due, must show that the money was borrowed for the use and benefit of the firm, or was authorized by the defendant *Carpenter* to be given, or subsequently sanctioned by him, or he is not liable on the note."

The court then instructed the jury as follows: "I have admitted in evidence the articles of copartnership, and a published advertisement of the firm, for the purpose of showing what was the general business and purposes of the firm.    It is for you to determine what kinds of business may be done within the scope of this general business.    If you find that the giving of this note was not embraced within the proper business of the copartnership, as shown by the articles of copartnership and by the actual dealings and business of the firm, and that this was known by the payee, then you are to inquire: 1st. Whether the note was given with the assent of the other partners, or under such circumstances that they had knowledge of it, and would be presumed to have assented to it.    2d. Whether the proceeds and benefits of the transaction went to the use of the firm.    In either of these cases the plaintiff could recover of the firm.    All the partners are presumed to have knowledge, so far as third persons are concerned, of their own partnership books."

Verdict for the plaintiff; motion for a new trial overruled; and judgment upon the verdict; from which the defendant *Carpenter* appealed.

*Wakeleys & Vilas* and *Chauncey Abbott*, for appellant. [No brief on file.]

*J. C. Hopkins* and *Smith & Keyes*, for respondent.

*By the Court*, COLE, J. The first objection which we deem it necessary to notice is to the ruling of the circuit court rejecting the record offered to show the pendency of a prior suit for the same cause of action. It is stated on the brief of counsel, that the court rejected the record solely on the ground that, being matter in abatement, it was waived by pleading matters in bar. In other words, the court held that the present system of practice had not changed the common law rule which required that matters in abatement should be pleaded and disposed of before putting in a defense on the merits. We disagree with the circuit judge upon this point, since we have no doubt that, under the statute, a defendant may unite in his answer matters in abatement with those in bar. It has been so decided in New York, and such, we think, is the fair and rational construction of the provisions of chapter 125, R. S. *Sweet vs. Tuttle*, 4 Kernan, 465; *Gardner vs. Clark*, 21 N. Y., 399. But this error we consider quite immaterial, for the reason that the record showed a discontinuance of such former suit, and therefore the appellant could not have been prejudiced by its exclusion. For the record states that the plaintiffs in that suit discontinued the action on the 22d day of January, 1861, which, in the absence of all proof to the contrary, we must presume was done before the commencement of this suit. This is an order actually entered of record in the cause. But it is said that the order was ineffectual to discontinue the suit without the payment of the defendants' costs. Concede that this was so, but what is there to show that those costs were not paid? We do not suppose it is usual to enter upon the record

that the costs are paid. It was undoubtedly competent for the plaintiffs to discontinue the first suit by entering the proper order and paying or offering to pay the costs of the opposite party. This will not be denied. The proper order was entered, and there is not one particle of proof offered or shown upon the question of payment of costs. As the record itself shows that the suit was discontinued, we cannot presume that such discontinuance was ineffectual on account of some extrinsic fact not shown to exist. On the contrary we must follow the record, since this is the only evidence we have upon the point, and say that the prior suit was properly discontinued. And in this view the exclusion of the record could work no injury to the defendant, it not tending to show the pendency of the former suit.

The action was brought upon a promissory note claimed to have been given by a member of the firm of *Carpenter, Noyes & Co.*, in a manner and under circumstances making it a partnership debt. The defendant *Carpenter* resists the payment of the note principally upon the ground, as stated in his answer, that it was not given to secure any debt for which he or the firm was liable; nor made with his knowledge or consent; nor for his profit or advantage; nor in any transaction of partnership business; but was given in fraud of his rights by his partner and co-defendant *Noyes*, to secure a private and individual debt. It appears that the note was given for money borrowed by *Noyes*, who signed the firm name; and the real and important point of inquiry is, whether, under the circumstances, he had authority to borrow money and give a note therefor which should bind the firm. If he had such authority, then, though the money was not used for the firm, but was misappropriated by *Noyes*, still we suppose the firm is liable, unless the lender had notice of the misapplication, which was not the case here. We have then to inquire whether borrowing money and giving notes therefor in the name of the firm was consistent with the partnership business and within

the scope of its authority express or implied. On the one hand it is contended that the partnership was special or limited, confined to the transaction of land-agency and money-broker business on commission, without any authority given one partner to borrow money on the credit of the firm: while on the other hand it is insisted that one of the objects of the partnership was to loan and deal in money, and that borrowing money is perfectly consistent with this business and with the regular course of the partnership dealings. Considerable evidence was given on the trial, or was offered and rejected, tending to support one theory of the case or the other, and a number of points are made arising upon instructions either given or asked and refused, which we think will be sufficiently met and disposed of in considering the different clauses of the articles of copartnership. These articles of copartnership were introduced in evidence, and if it can be said, upon a fair construction of them, that authority was given one member to borrow money in the name or on the credit of the firm, or if such a power may fairly be implied from the nature and objects of the partnership operations, then a consideration of all other questions discussed upon the argument becomes unnecessary. We will then look into the articles of copartnership themselves, to see what business was contemplated to be transacted by the partnership and what comes fairly within the scope of the authority therein granted.

In the first clause of the articles the parties therein named agree with each other " to engage in the general business of land agents and money and commission brokers, and to continue in the same so long and no longer than the said parties can mutually agree." The fourth clause provides, " Should either party hereto furnish more cash capital than the other, in the business, he shall be allowed ten per cent. per annum for all such moneys, and the balance of the profit, if any, shall be divided equally, as the other profits, between the parties hereto." Eighth: " Neither party shall draw from the funds

of the firm, unless there shall appear from the books and ac-counts thereof to be funds over and above the liabilities of said firm; and in no case shall either party draw more than twenty-five dollars per month without the mutual consent of the parties hereto." Ninth: "All moneys belonging to the firm or individuals, when amounting to more than fifty dollars, shall be deposited in one of the banks of the city of Madison, unless by mutual consent we agree to do otherwise. Said moneys to be deposited in the name of the firm or the individ-ual to whom said moneys may belong." Tenth: "No moneys belonging either to the firm or to individuals shall be loaned or paid out without the consent of the parties hereto, and all matters pertaining to the value or safety of securities offered for money shall be submitted to both parties hereto for ap-proval." The other clauses of the agreement relate to the place and manner of conducting the business, but they have no bearing upon the point in consideration.

Now from these clauses it is very obvious that the parties did not contemplate the transaction of a mere agency or bro-kerage business alone, but did intend to keep on hand a cash capital belonging to the firm and individuals, and to make loans of money as the exigencies of their business might ena-ble them to do. For if indeed they intended to confine the partnership operations to a mere agency and money brokerage, why was provision made that if either party furnished more cash capital than the other he should be allowed ten per cent. interest thereon; or that no funds of the firm should be drawn out unless there was sufficient to meet the liabilities of the firm; and more especially why were the stipulations made in regard to depositing the money belonging to the firm in bank, or to loaning it out on securities to be approved by the parties? These stipulations are utterly inconsistent with the idea that they were to confine their business to that of a land agency and middle men or intermediate negotiators. They evidently contemplated keeping on hand a cash capital and dealing in

money by making loans. If this was one of the objects of the partnership, then the power was necessarily granted to the members of the firm to transact the business in the usual way and bind the firm by his acts. For the principle is elementary, that each partner has power to bind his copartners by any acts within the legitimate limits of the partnership operations. This partnership being formed not to transact agency business alone, but one of its objects being to deal in money, to keep it on hand and make loans as their means and circumstances would allow, the power was necessarily given each member of the firm to borrow money in its name and on its credit. It seems to be strictly analogous to a partnership formed to conduct a mercantile business, where each individual buys and sells for the company and purchases on the credit of the firm when necessary for its successful operation. For if the intention was to deal in money, make loans &c., it would be essential frequently to borrow funds, or this branch of their business would cease. This power to borrow is implied in the very existence of a partnership formed for such a purpose.

On the argument we were referred to a great number of authorities where it had been decided that in partnerships between attorneys, physicians, artisans or farmers, or those established to conduct some particular business, one partner could not bind another in a matter unconnected with the objects of the firm. These cases are decided upon sound principles and in entire harmony with the views announced. They all say if the act performed is necessary for the successful carrying on of the business of the firm, then the law implies an authority to do it. Persons associated together for the practice of law or medicine have no *general* authority to bind each other by giving promissory notes or drawing bills of exchange, because these things are foreign to the purpose of the partnership. But the cases say, if the note was executed for anything for which the firm had use, or which, from the nature of the company, was necessary and usual to the successful prosecution of

its operations, then it becomes a charge against the firm. This is the result of the authorities, and disposes of this case.

In this view of the nature of this company, and of the power conferred upon the members of the firm by the articles of co-partnership, it follows that the judgment of the circuit court must be affirmed.

Judgment affirmed.

NOTE.—On a motion for a rehearing, the counsel for the appellant urged that the payment of the costs being necessary to a valid discontinuance of the suit, the pendency of which was plead in abatement, a record which did not show such payment did not show a valid discontinuance. It cannot be claimed that there is any legal presumption that attorneys have done everything necessary to be done previous to filing a paper. The party who claimed the benefit of the discontinuance must show that it was rightfully entered. *Babb vs. Mackey,* 10 Wis., 871. Clerks invariably enter the payment of costs on their dockets when made to them, or when reported by the sheriff, or when any receipt or other evidence of such payment is produced to them. Rule 1st of the Rules of 1857 contemplates that books shall be kept for that among other purposes. But if it were unusual to make such payment matter of record, then, the record being offered and admitted, there would be no proof either way, and the party who relied upon showing a discontinuance should be required to prove such payment by other evidence. Sec. 71, ch. 133, R. S., requires every officer receiving any fees to give a receipt for them. If, therefore, the costs were paid, the plaintiff had, or might have had, the means of proving when, where and to whom they were paid. 2. But suppose the defendant was bound to show affirmatively that the costs remained unpaid, still he must first have produced and given in evidence the record. It would be absurd to offer proof that the costs in a particular suit were not paid, until the record be admitted to show the existence of the suit. The record was rejected, in fact, because the circuit court held the answer to be improper, and this court, holding the answer to be good, sustains the ruling because the defendant did not prove a fact which he could not prove until he had first introduced the record. 3. Counsel contended that the articles of copartnership should all be construed with reference to the first paragraph, which defined the business in which the partners proposed to engage, viz., that of "land agents and money and commission brokers;" that they were all consistent with the idea of an exclusive agency business, and did not show that the borrowing of money was contemplated. 4. Even if the articles of copartnership did authorize the firm to engage in something more than an agency business, it might well be that, in fact, no such business was ever done. Two persons enter into copartnership as lawyers. In the articles there may be provisions contemplating the further business of buying and selling land warrants, exchange, &c. ; but in fact they never engage or advertise to engage in anything beyond the practice of the law. The public knows nothing of the secret provisions of the articles of copartnership. One of them borrows money for a purpose not connected with their professional business, and gives the firm note. In a suit against the other there is proof tending to show, or showing positively, that the

firm advertised and did no business except as lawyers. Ought not the court to instruct the jury as to the law of the case on the theory that no other business was in fact done? And ought it not to permit the defendant to prove what business the firm was engaged in at the time the money was borrowed and the note given?

The motion for a rehearing was denied.—REP.