BAILEY SMITH, Appellant, vs. THE STATE OF KANSAS, Appellee.

The killing in question in this case, not having been done by poison nor lying in wait, nor in an attempt to commit a felony, must have been willful, deliberate and premeditated to be murder in the first degree, under section one of the act regulating crimes and punishments, and such deliberate and premeditated will or intent to kill, must be alleged in the indictment.

A clause in an indictment setting forth, first, a willful, deliberate and premeditated assault ; second, a willful, deliberate and premeditated shooting and wounding ; third, that the wounding was mortal, and that the wounded man instantly died ; and closing as follows : " And the jurors aforesaid, upon their oaths aforesaid, do say that the said Bailey Smith, him, the said James Duke in the manner and by the means aforesaid, unlawfully, feloniously, willfully. deliberately, premeditatedly, and of his malice aforethought, did kill and murder," &c., contains a sufficient allegation of the intent, and a motion to arrest the judgment on the grounds that the facts stated in the indictment do not constitute a public offense, was properly overruled.

Sections eighty-seven and eighty-nine of the criminal code divest an indictment of all artificial and technical construction, and give to its language its ordinary meaning.

All laws relating to criminal matters are made, by statute, applicable to the criminal court of Leavenworth county.

The defendant sustained his application for a change of venue, by his affidavit, fully conforming to section one hundred and fifty-two of the criminal code, and his application being out of time, he conformed to the requirements of section one hundred and fifty-nine, by swearing that the grounds of his motion had come to his knowledge since the last continuance ; held, that. though section one hundred and fifty-two is, by its terms, permissive, yet that it is in fact like section one hundred and fifty-nine, imperative, and the rights given to the defendant by it, absolute ; held, that upon such a showing it is not discretionary with the court to refuse the change ; that the defendant is not required to prove to the satisfaction of the court, but only to support his motion by an affidavit, and that there is no provision for receiving counter evidence. Held, also, that a refusal of the court, on such a showing, to grant the change, was error.

Where motion to change the venue is made by the defendant below, without serving notice thereof on the district attorney, but where he argued the motion on the merits, not objecting to the want of notice, held, that the effect of the motion cannot be avoided by afterwards showing such want of notice. Held, that such want of notice is no ground for overruling the motion.

The plaintiff in error was convicted of murder in the first degree, at the June term, 1863, of the criminal court for Leavenworth county.

The following is a copy of the body of 'the indictment:

" The grand jurors for the state of Kansas, in and of the county of Leavenworth, duly impannelled, sworn and charged to inquire within and for the county of Leavenworth, in the name and by the authority of the state of Kansas, upon their solemn oaths do present: that Bailey Smith, late of said county of Leavenworth, and within the jurisdiction of this court, on the 21st of April, A. D. 1862, in and upon James Duke, in the peace of God and this state, then and there being, did unlawfully, feloniously, willfully, deliberately, premeditatedly and of his malice aforethought, make an assault, and the said Baily Smith, with a certain pistol, commonly called a revolver, then and there charged with gunpowder and divers, to wit: six leaden bullets, which said pistol he, the said Baily Smith, in his right hand then and there held, then and there unlawfully, feloniously, willfully, deliberately, premeditatedly and by and of his malice aforethought, did discharge and shoot off against and upon the said James Duke, and that the said Baily Smith, with the leaden bullets aforesaid, out of the pistol aforesaid, then and there, by the force of the gunpowder aforesaid, by the said Baily Smith discharged and shot off as aforesaid, then and there, unlawfully, feloniously, willfully, deliberately, premeditatedly and of his malice aforethought did strike, penetrate and wound the said James Duke in and upon the left side of the breast of him, the said James Duke, thereby, then and there giving to him, the said James Duke, in and upon the left side of the breast of him, the said James Duke, one mortal wound of the length of one inch, and of the depth of five inches, of which said mortal wound the said James Duke, then and there, to wit: on the said 21st day of April, A. D. 1862, at the county of Leavenworth aforesaid, and within the jurisdiction of this

court, instantly died; and the jurors aforesaid, upon their oaths aforesaid, do say that the said Baily Smith, him, the said James Duke, in the manner and by the means aforesaid, unlawfully, feloniously, willfully, deliberately, premeditatedly and of his malice aforethought, did kill and murder, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Kansas."

At the time the case was called for trial, the defendant moved the court for a change of venue, on affidavit filed; which motion the court overruled, and the defendant excepted. The trial then progressed. After the state rested, the defendant produced witnesses, who had known him intimately for several years, whose testimony, it was claimed, showed that the defendant was afflicted with moral mania at and for some years previous to the alleged homicide.

At the conclusion of the evidence, the court instructed the jury as follows:

"Gentlemen of the Jury:—* * * You are the exclusive judges of the facts in the case, of what the testimony proves and what it disproves.

"The state charges that the defendant, Baily Smith, is guilty of murder in the first degree, in the homicide of James Duke, on the 21st day of April, A. D. 1862.

"To this the defendant pleads not guilty. The law presumes every man, presumes this defendant, to be innocent, until proved to be guilty. It is the duty of the state to prove, beyond a reasonable doubt, the guilt of the defendant, before you can convict. What is a reasonable doubt? It is not a mere possible doubt, because everything pertaining to human affairs, and depending upon moral evidence, is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge. It depends upon

the testimony. You are sworn to do justice, upon the law and the evidence. You must be satisfied, by the testimony, that the transaction for which this indictment is brought took place within this county; that the defendant killed James Duke, which is admitted by defendant's counsel; that he committed the act willfully, deliberately, and premeditatedly, before you can convict the defendant of murder in the first degree. Murder, at common law, is defined the killing of a person of sound memory and discretion, unlawfully of any creature in being, and in peace with the commonwealth, with malice prepense or aforethought, either express or implied. Our statute, taking this as the definition of murder, divides it into two degrees. Murder in the first degree, is murder as thus defined, with the addition that it must be done willfully, deliberately, and premeditatedly. Murder in the second degree is murder thus defined, but without deliberation or premeditation. To convict the defendant of murder in the first degree, you must, in addition to the points I have mentioned, be satisfied, first, that the prisoner perpetrated the act purposely; second, that he did it with intent to kill; third, that he did it of deliberate and premeditated malice. To constitute deliberate and premeditated malice, the intention to do the injury must have been deliberated upon, and the design to do it formed before the act was done; though it is not required that either should have been for any considerable time before. This supposes the party, by reflection, understood what he was about to do, and intended to do it, in order to do harm. If these things are not proven to your satisfaction, you will then examine further. If the act was done maliciously, was it perpetrated deliberately, with premeditation? If the prisoner coolly formed the design to kill, for any time before he executed it, the act was deliberate and premeditated. But if at the time, he was led to form the design to kill by great provocation, heated blood and excited passion, which continued from then until the act was done, it

Smith *v.* The State of Kansas.

would not be held deliberate and premeditated. Yet, if the design was formed under provocation, and in hot blood, and time afterwards elapsed for passion to subside, and reason to resume her empire, the provocation and hot blood would be no excuse or palliation, and the offense, if otherwise proved, would be murder in the first degree.

"The first instruction, asked for by the state, is refused; or rather I have substituted what seems to me more expressly to state the law in the case."

And the court then further instructed the jury as follows:

"A mere peculiarity of temper or disposition, or the fact that a man may be of a violent or irascible temperament, will not justify a willful homicide;" to which last instruction, so given, the defendant's counsel excepted.

And, "as to sanity or insanity, I charge you that strong mental powers are not necessary to make a defendant guilty: weak mental powers do not excuse crime. If his mind is in a healthy normal condition, he is a person of sound memory and discretion;" and to the giving of the latter part of this instruction, commencing with the word "if," etc., the defendant's counsel excepted.

The court then further charged:

"The law presumes every man to be of sound memory and discretion. If the defendant seeks to avoid that presumption, he must introduce testimony to show that his mind was disordered, that his reason had either permanently or temporarily lost control of his actions."

To which defendant excepted.

And the court then charged:

"If he fails to introduce such testimony, the law demands that he be adjudged of sound discretion."

And, "If he does introduce such testimony, then the burden is still on him to establish such derangement."

24

And, " He must establish such derangement, whether general or partial, to your satisfaction, before you can acquit on that ground."

And to the giving of each of these instructions the defendant's counsel excepted.

The court then charged the jury as to the form of the verdict, and the punishment for the different degrees of murder.

The defendant's counsel then prayed the court to instruct the jury as follows :

" If the evidence, which the defendant has adduced in relation to his insanity, raises a reasonable doubt in your minds as to whether the defendant was sane or insane at the time he committed the act complained of, then you must acquit him ;" which was refused, and defendant excepted.

These were all the instructions which were given to the jury. The jury found the defendant guilty of murder in the first degree.

At the same term, defendant's counsel moved for a new trial, on three grounds :

First. That the court misdirected the jury in a material matter of law.

Second. That the verdict was contrary to law.

Third. That the verdict was contrary to the evidence.

This motion the court overruled, and defendant's counsel excepted.

And at the same term, defendant move an arrest of judgment, which motion the court overruled, and the defendant's counsel excepted.

Therupon the court rendered judgment on the verdict, and sentenced the defendant to be executed.

To reverse this judgment, the defendant prosecutes this appeal.

*Hemingray & Gambell and Crozier & Ludlum,* for appellant.

I. The motion for a change of venue should have been sustained.

1. The defendant clearly brought himself within the provisions of the statute in reference to a change of the place of trial. (*See Comp. Laws, p.* 259.) Section one hundred and fifty-two provides : " Any criminal cause, pending in any district court, may be removed by the order of such court, or the judge thereof, to the district court of another county in the same district, whenever it shall appear, *in the manner hereinafter provided,* that the minds of the inhabitants of the county in which the cause is pending, are so prejudiced against the defendant that a fair trial cannot be had therein." Section one hundred and fifty-three provides for a case in which the inhabitants of the entire district are so prejudiced. Section one hundred and fifty-four provides : " Such order of removal, as specified in the two preceding sections, shall be made on the application of the defendant ; or where the defendant is under the age of sixteen, on the application of the parent or guardian of such defendant, and if such infant has no parent or guardian, then on the application of any two respectable citizens of the county where the cause is at issue." Section one hundred and fifty-five provides : " The petition of the applicant for a change of venue shall set forth the facts, and the truth of the allegations shall be supported *by the affidavit of the defendant,* or some credible disinterested third person, and reasonable previous notice of such application must be given to the prosecuting attorney." The application was properly made, and was supported by the requisite affidavit. No counter affidavits were offered ; nor could any have been received. The motion was argued by counsel on both sides, and was overruled by the court.

2. But it will be claimed by the defendant in error that the whole matter was in the discretion of the court. To this we answer, that the statute has not left it at the discretion of the court. It provides the manner in which, and in what cases, the application shall be made, and by what proof it shall be supported. And if the defendant brought his case within the statute, it was imperative upon the court to make the order. If the statute had not specifically prescribed what showing should be made, and by whom and in what manner, it might then be claimed, with, perhaps, some show of reason, that the court had a discretion to grant or refuse the application. We refer the court to a few decisions, in both civil and criminal cases, under similar statutory provisions. (*Rines vs. Boyd,* 7 *Wis.,* 155.) In this case the supreme court of Wisconsin held that if the requisitions of the statute had been complied with, it was imperative upon the court to grant the change of venue, *and that it was not a matter in its discretion.* (*See, also, Clark vs. The People,* 1 *Scam.,* 119.) (*Baldwin vs. Marygold,* 2 *Wis.,* 413.) In this case, held that the statute in relation to a change of venue in civil cases was imperative, and left nothing in the discretion of the court. (*Also Witter vs. Taylor,* 7 *Ind.,* 110; 9 *Texas,* 358.) (*Freleigh vs. The State,* 8 *Mo.,* 606.) In this case the supreme court of Missouri held that the statute in reference to a change of venue being complied with, it is *imperative* upon the court to grant the application, and that nothing is left to its discretion. And this decision is made under a statute of which ours is a trancript. (*See Rev. Stats. Mo.,* 1855, *p.* 1184, §§ 18, 19, 20, 21; *McGoon vs. Little,* 2 *Gilman, Ill.,* 42; *Barrows vs. The State,* 11 *Ill.,* 121.)

3. But in those states where the law does not make it imperative upon the court to grant a change of venue, upon a certain showing being made, it has been repeat-

Smith *v.* The State of Kansas.

edly decided that where the discretion of the court has been abused, error will lie. (*Gordon vs. The State*, 3 *Clarke*, 410.) The code of Iowa, giving the right of petition for a change of venue, and prescribing what it shall contain, provides that "the court in the *exercise of a sound discretion*, may grant such change of venue." The court, in this case, say that this discretion will not be interfered with, unless it is clearly shown to have been improperly exercised; that there may be cases in which the action of the judge will manifest an abuse of this discretion, and that in such case, safety to the citizen and the integrity of the law, would compel a review. (*See, also, People vs. Fisher*, 6 *Cal.*, 154; *Shattucks vs. Myers*, 13 *Ind.*, 46; *Griffith vs. The State*, 12 *Ind.*, 548; *State vs. Nash*, 7 *Clarke*, 347; *State vs. Barret*, 8 *Clarke*, 536.)

4. At all events, the affidavit or petition filed by the defendant, made out a *prima facie* case under the statute, and no counter affidavits having been offered, if any could have been received, the order should have been made. And if the court should be of opinion that the matter was in the discretion of the court, then we claim that such discretion was abused. (*State vs. Nash*, 7 *Clarke*, 347.)

5. It is true the record does not show that any written notice was given to the prosecuting attorney; but notice was actually given. But that is not material, since the record does show that he was present and argued the motion, which was heard, and decided upon the affidavit or petition filed by defendant. He might have objected to the application being heard, on the ground that notice had not been given, if such was the fact; but he waived any such objection by appearing and arguing the motion. But the filing of the petition in his presence, in open court, and calling up the motion for hearing, was notice.

The fact, outside of the record, is that he waived a written notice, and voluntarily came in to resist the appplication. (*Baldwin vs. Marygold*, 2 *Wis.*, 419; *Rines vs. Boyd*, 7 *Wis.*, 155; *Reed vs. The State*, 11 *Mo.*, 379.)

II. The court erred in charging the jury that " a mere peculiarity of temper or disposition, or the fact that a man may be of a violent or irascible temperament, will not justify a willful homicide."

1. This portion of the charge undoubtedly states the law as it was a hundred years ago. The moral powers are as essential as the intellectual, to constitute a complete human mind. And these faculties are equally liable to perversion and derangement. So, then, we have a form of active insanity, which is termed *moral mania;* by some, *impulsive insanity*, which is defined to consist " in a morbid perversion of the natural feelings, affections, *inclinations, temper, habits* and *moral dispositions*, without any notable lesion of the intellect, or knowing and reasoning faculties, and particularly *without any maniacal hallucination.*" (*Guy's Principles of Forensic Medicine*, 306; *Dean's Med. Jurisp.*, 496; *Ray's Jurisp. of Insanity*, §§ 163 *to* 169.) It is also described as " a state in which reason has lost its empire over the passions, and the actions by which they are manifested, to such a degree that the individual can neither repress the former nor abstain from the latter. It does not follow that he may not be in possession of his senses, and even his *usual iatelligence;* since, in order to resist the impulses of the passions, it is not sufficient that the reason should impart its counsels, but we must have the *necessary power* to obey them. The maniac may judge correctly of his actions without being in a condition to repress his passions, or to abstain from the acts of violence to which they impel him. (*Dean's Med. Jurisp.*, 497; *Ray's Med. Jurisp. of Insanity*, §§ 169 *to* 182, 187, 190.) The

Smith v. The State of Kansas.

court embodied in this instruction the popular idea which
recognizes insanity only in delusion, raving and lesions
of intellect; whereas these are never to be met and
found in pure moral mania. All the authorities agree
that there need not be any lesion of the intellect; and
that a person may be afflicted with moral insanity, while
he retains full possession of his usual powers of intel-
lect. (*Ray*, § 190; *Dean's Med. Jurisp.*, 498, *et seq.*,
*and cases cited.*) On page four hundred and ten, the
author, speaking of homicidal insanity, says: "Individ-
uals in the full possession of their usual powers of intellect,
whose social and moral organizations, to all appearance,
remain unaffected, have imbrued their hands in the blood
of the innocent, frequently in that of their wives and
children, *simply because they felt that they must destroy.*
The records of insanity are full of such instances, and I
am sorry to be compelled to add, *that those of our crim-
inal courts of justice have too frequently shown that those
who could destroy, without motive, and without a sane
will, should, as their reward, be murdered under the forms
of law.*" Further on this point was cited *Commonwealth
vs. Rogers*, (7 *Metcalf*, 500;) *Ray*, (§§ 212 to 260, 289
to 321;) *Wharton & Stile's Medical Jurisprudence*, (§§
53 to 61, 186 to 191.)

2. It is no answer to say that when a person is driven on
by an uncontrollable impulse, it is not a peculiarity of
temper or disposition, but is a derangement of the mind,
either permanent or temporary.

3. The court should have added to this instruction. The
court is required by law to state fully to the jury all
matters of law which are necessary for their information
in giving their verdict. (*See Comp. Laws, p. 268, § 215.*)
On this point the following cases were cited: *Sargent vs.
———, (5 Cowen, 106; )State vs. Floyd, 6 Jones, N. C.,
392;) Hinch vs. The State, (25 Geo., 699;) Payne vs.*

*Commonwealth*, (1 *Met.*, *Ky.*, 370;) *Waters vs. Bristol*, (26 *Conn.*, 398;) *Ritte vs. Commonwealth*, (18 *B. Mon.*, 35;) *Hopkins vs. Fowler*, (39 *Maine*, 568;) *Higgins vs. Lee*, (16 *Ill.*, 495.)

4. This court is not to consider how this instruction might have been understood by a member of the legal profession. It is a sufficient objection that it might convey to the mind of an unprofessional man of ordinary capacity, an incorrect view of the law, applicable to the case. (*See Sumner vs. The State*, 5 *Blackford*, 579; *and see, further, Chandler vs. Fulton*, 10 *Texas*, 2; *Thatcher vs. Jones*, 31 *Maine*, 528; *James vs. Langdon*, 7 *B. Monroe*, 193; *White vs. Thomas*, 12 *Ohio S. R.* 312; *Boyles vs. Davis*, 1 *Pick.*, 206; *Lane vs. Crombie*, 12 *Pick.*, 177; *Boyden vs. Moore*, 5 *Mass.*, 365; *Dudley vs. Sumner*, 5 *Mass.*, 438; *Win vs. Anderson*, 9 *Conn.*, 107; *State vs. Horne, Sup. Ct. Kan.*, *MSS.*)

III. The court erred in charging the jury that if the defendant's mind was in a healthy normal condition, he was a person of sound memory and discretion.

1. We have shown, most conclusively by the authorities cited under our second point, that persons may be afflicted with this species of insanity without any injury of the intellectual faculties, without exhibiting any maniacal hallucination; that they may be possessed of their *usual intelligence*, and that they may judge correctly of their actions. (*See authorities cited under second point.*)

2. If this part of the charge is correct law, then there is no such thing as moral mania, either general or partial; and there is no such thing as an insane delusion, or an uncontrollable impulse.

3. By this charge the whole question which the defendant's counsel sought to make before the jury was entirely withdrawn from their consideration. The court might just as well have told the jury in words what it did in sub-

stance, that unless the *intellectual* faculties were deranged, or in some way affected, then the defendant was a person of sound memory and discretion.

4. But what would the jury be likely to understand by the expression, "in a healthy normal condition?" The word "normal" means, "according to a rule—regular; according to an established law, rule or principle." The jury, then, must have understood the court to mean that if the defendant generally acted as other men do, in every day business matters, he was a person of sound memory and discretion. Would not such an instruction shut out from the consideration of the jury the only matter upon which the defendant relied as a defense on this trial? We beg the court to bear in mind, in connection with the point we are now urging, that the court had, but a moment before, expressly told the jury that a mere peculiarity of temper or disposition, or the fact that a man may be of a violent or irascible temperament, will not justify a willful homicide. Taking these two instructions together, the jury must have understood the court to mean that they must be satisfied that the defendant was actually *insane*, according to the popular acceptation of the meaning of that word, before they could acquit.

IV. The court erred in charging the jury that in order to avoid the presumption of sanity, the defendant must introduce testimony to show that his mind was disordered; that his reason had either permanently or temporarily lost control of his actions, and that if he failed to introduce any such testimony, the law demands that he be adjudged of sound discretion.

1. This portion of the charge contains the same idea, to which the court below persistently clung throughout the entire instructions; and that is, that in order to render a person insane, his mind must be disordered, that his intellectual faculties must be in some way affected.

2. But we have a more serious objection to this instruction than the one already mentioned. The court told the jury that the *defendant* must introduce this testimony to show his insanity, and if he failed so to do, he must be held to be a man of sound memory and discretion. In other words, the jury were limited to the testimony introduced by the defendant in determining the question of his sanity. This was clearly erroneous. The jury had a right, and were bound, to look not only to the evidence offered by the defendant, but by the state, in determining this question. (*Commonwealth vs. McKie*, 1 *Gray*, 61.)

3. But it will be claimed that this is not a fair construction of this instruction, because the court, in another portion of the charge, told the jury that before they could convict they must be satisfied of his guilt, beyond a reasonable doubt, and that a reasonable doubt was that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge. It is difficult to perceive what connection there is between these two portions of the charge. The one is a general instruction, which the court was bound to give, and has no connection, whatever, with the special instruction which we are now discussing.

4. This being a separate charge, it is not for the court to say that it was not the controlling one with the jury, or some one of the jury. And if the charge was erroneous, this court must reverse the judgment. (*Horne vs. The State, MSS. Decisions of the Sup. Court, January term,* 1862.)

V. The court charged the jury that if the defendant introduced testimony, the burden was still on him to establish his derangement, and that he must establish such derangement,

whether general or partial, to the satisfaction of the jury, before they could acquit on that ground; and the court refused to charge that if the evidence which the defendant had adduced, raised a reasonable doubt in the minds of the jury as to his sanity, at the time he committed the act complained of, then they must acquit him. In this the court clearly erred.

1. In criminal cases the burden of proof is on the state throughout, to make out the whole case. When a *prima facie* case is established, the burden of proof is not thereby shifted upon the defendant, nor is he bound to restore himself to the presumption of innocence which existed in his favor at the commencement of the trial. A *prima facie* case is simply the amount of evidence which may be sufficient to counterbalance the presumption of innocence, and warrant a conviction, if not controlled by other evidence. But when such a case is made, the presumption of innocence is not thereby taken away; it still remains in aid of any proof the defendant may offer to rebut the *prima facie* case made out by the state. The court below, in giving and refusing to give these instructions, seems to have confounded the subject of the *burden of proof* with a *prima facie case.* We will first refer the court to a few civil cases, which clearly show this distinction. (*Delano vs. Bartlett,* 6 *Cushing,* 364; *Powers vs. Russell,* 13 *Pick.,* 69; *Turttellott vs. Rosebrook,* 11 *Met.,* 460.) (*Lane vs. Crombie,* 12 *Pick.,* 177.) Action for injuries caused by defendant's negligent driving. Plaintiff proved negligence, and defendant relied upon want of ordinary care in the plantiff. *Held,* that the burden of proof is not shifted upon him to prove such want of ordinary care, but that it remains upon the plaintiff throughout the entire case. (*See, also, Adams vs. Carlilse,* 21 *Pick.,* 146; *Morrison vs. Clark,* 7 *Cush.,* 213; *Sawyer vs. Spafford,* 4 *Cush.,* 598.) This being the rule in civil

cases, there ought to be no difficulty in arriving at the true rule in criminal cases. We submit a few authorities. (*Commonwealth vs. McKie,* 1 *Gray,* 61; *Swallow vs. The State,* 22 *Ala.,* 20; *United States vs. Henry McClare,* 7 *Boston Law Reporter,* 439; *Doty vs. The State,* 7 *Blackford,* 427; *Coffee vs. The State,* 3 *Yerger,* 283; *Commonwealth vs. Dana,* 2 *Met.,* 329; *Commonwealth vs. Bradford,* 9 *Met.,* 268; *Commonwealth vs. York,* 9 *Met.,* 93.) We call the attention of the court to the dissenting opinion of Mr. Justice Wilde, and the authorities therein reviewed. We submit that the arguments advanced by this able judge, in this opinion, are unanswerable. After a thorough review of all the authorities, he says : " I am of opinion that the following conclusions are maintained on sound principles of law and manifest justice : *First.* That when the facts and circumstances accompanying a homicide are given in evidence, the question whether the crime is murder or manslaughter, is to be decided upon the evidence, and not upon any presumption from the mere act of killing. *Second.* That if there be any such presumption, *it is a presumption of fact,* and if the evidence leads to a reasonable doubt whether the presumption be well founded, that doubt will avail in favor of the prisoner. *Third.* That the burden of proof in every criminal case, is on the commonwealth, to prove all the material allegations in the indictment, and if, on the whole evidence, the jury have a reasonable doubt whether the defendent is guilty of the crime charged, they are bound to acquit him." (*See, also, Commonwealth vs. Kinball,* 24 *Pick.,* 373; 1 *Greenleaf's Ev.,* § 34, *note* 2.)

2. The presumption of innocence, until one is proved guilty beyond a reasonable doubt, necessarily leads to the same conclusion, to which we have come from the authorities already cited. That presumption extends to the whole

Smith *v*. The State of Kansas.

crime charged against the defendant: *First*. Innocence of the act charged to have been done. *Second*. Innocence of the intent charged. *Third*. Innocence of any intent at all. How, then, can it be claimed that when the state has offered evidence amounting to a *prima facie* case, the burden of proof is shifted upon the defendant? (*See, also, Commonwealth vs. Hawkins*, 3 *Gray*, 463; *Short vs. The State*, 7 *Yerger*, 510; *McDaniels vs. The State*, 8 *S. and Marsh*, 401; 1 *Leading Crim. Cases*, 347, *and notes; 2 Ib.*, 504 *and notes.*

3. In most of the states it is made a crime to maliciously destroy or injure the personal property of another; or to cut down or injure trees, etc. But it is well settled that such an offense is not made out by the proof of a voluntary and willful injury to the property. There must, in addition to that, be proof of actual malice, actual resentment towards the owner of the property. (*Rex vs. Pearce*, 1 *Leach, C. C.*, 544; *The State vs. Latham*, 13 *Iredell*, 33; *The State vs. Robinson*, 3 *Devereux & Battle*, 130; *The State vs. Pierce*, 7 *Ala.*, 728.)

4. The judge who tried this cause seems to have thought that there is such a thing as confession and avoidance, in criminal pleading. But this idea is altogether erroneous. To an indictment a defendant pleads no special defense of justification or excuse. He pleads the general issue, which denies and puts in issue the act, the intent, and every ingredient of the crime charged. There cannot be a confession and avoidance of a criminal charge, and *everything* is put in issue by the defendant's plea of *not guilty*. Therefore the burden of proof is always on the government, and is never shifted upon the defendant. (*See* 1 *Leading Crim. Cases*, 355.)

5. If, under the general issue, the "defense" to an indictment is insanity, is not the burden of proof upon the

state, to satisfy the jury, beyond a reasonable doubt, that the defendant was sane when he committed the act? And if the jury have reasonable doubts of his sanity, can they convict him of guilt while that doubt remains? We think not. " Murder is when a person of *sound memory and discretion* unlawfully killeth any reasonable creature in being, and under the king's peace, with malice aforethought, express or implied." (4 *Black. Com., p.* 195.) The fact of soundness of mind is, then, an essential ingredient of the crime of murder, and it must be made out, like the ingredient of malice, like the fact of killing, itself, to the satisfaction of the jury, beyond a reasonable doubt. How the soundness of mind of the prisoner is to be shown is entirely immaterial. But it it must be shown. The prosecution may either introduce living witnesses to prove it, or may rely upon the presumption of sanity which the law raises. The law presumes *the fact* of sanity. When sanity is thus proved, a *prima facie* case is made, upon which the jury may convict, if no evidence of facts and circumstances is offered to control or rebut the evidence offered by the prosecution. This presumption of law is a mere *witness* for the prosecution as to the question of sanity. But when this *prima facie* case is made out, as we have already shown, the burden of proof is not thereby thrown upon the defendant. We are aware that there are cases in which language is used very similar to that in which the charge was given, which we are now discussing. But an examination of those cases will show that in some of them the point was not before the court, and in all of them the courts failed to distinguish between what constitutes proof, or a *prima facie* case, and what is termed the burden of proof. And it will further appear that no attention was paid to the circumstance that notwithstanding the legal presumption of sanity.

the sanity of the defendant's mind is to be made out, in
some way, affirmatively, upon the trial, *as a part of the
case for the state.* We shall first review these cases and
then cite the authorities sustaining the position which we
have taken. *McNaughton's Case* (47 *Eng. Com. L. R.*,
131,) does not at all meet or discuss the question which
we make here. *State vs. Spencer,* (1 *Zabriskie,*) really
decides nothing; but, so far as it does, it sustains our
position. The judge says: " When the evidence of
sanity on the one side, and insanity on the other, leaves
the scales in equal balance, or so nearly poised that the
jury have a reasonable doubt of his insanity, then a man
is to be considered sane, and responsible for what he
does." And we may fairly reason, from this decision,
that if the jury entertain reasonable doubts of his *sanity*
they were to find the prisoner insane. In *Commonwealth
vs. Rogers,* (7 *Met.,* 500,) the court seems to have gone
upon the theory that the defense of insanity is in the
nature of a confession and avoidance. We have shown
this to be erroneous. The court also held that the bur-
den of proof is shifted upon the defendant. We have
shown that the burden of proof never shifts. In this
case, also, the court fails to distingush between a *prima
facie* case and the burden of proof. In *State vs. Brin-
yea,* (5 *Ala.,* 244,) the jury are told that if, upon the
whole evidence, they entertain *no* reasonable doubt of his
sanity, they must find defendant guilty; and conse-
quently, that if they have a resonable doubt of his sanity,
they must acquit. This is just what defendant's counsel
requested the court to charge, and which the court refused
to do. (*State vs. Marler,* 2 *Ala.,* 43.) In this case the
jury were told that if, upon the whole testimony, they
entertained a reasonable doubt of the defendant's sanity,
they must acquit. This case, then, does not, as has been
claimed, sustain the charge of the court below. (*McAl-*

*ister vs. The State,* 17 *Ala.,* 524.) All that this case decides is simply this: That to render the defense of insanity available, the evidence should be such as to satisfy the jury that at the time the act was done, the accused was not conscious that he was committing an offense against the law of God or man. This is simply the judge's *definition of insanity.* (*State vs. Hastings,* 21 *Mo.,* 464.) In this case the court proceeds entirely upon the idea that when a defendant alleges insanity, he thereby confesses and seeks to avoid the charge made against him. The same remarks apply to *State vs. Starling,* (6 *Jones, N. C.,* 366;) *Commonwealth vs. Eddy,* (7 *Gray,* 584;) *Newcomb vs. State,* (37 *Miss.,* 283.)

6. But we claim the law to be that upon a trial for murder, when the killing is either proved, or admitted by the prisoner, and his defense is insanity, the defendant is entitled to the benefit of any doubt resting upon the question of sanity. Sanity is a necessary condition of mind to constitute the crime of murder, and proof of it is a part of the case to be made by the prosecution. (*The People vs. McCann,* 16 *N. Y.,* 58.) In this case the court below charged substantially as the court charged in the case now before the court. The defendant was convicted, and appealed. The court reviewed all the authorities upon the question, and plainly decided the law to be as we have just stated it. (*See, also,* 1 *Leading Crim. Cases,* 87, 347, *and notes.*)

7. But even in civil cases, the rule is not uniform that the burden of proof is on him who alleges insanity. Take the case of the probate of wills. In order to make a will, the testator must be of sane mind. The competency of the testator is to be proved affirmatively by him who presents the will for probate, and thereby asserts the capacity of the testator. (*Gerrish vs. Nason,* 22 *Maine,* 438; *Cilly vs. Cilly,* 34 *Ib.,* 162; *Comstock vs.*

*Hadgens,* 8 *Conn.,* 254; *Potts vs. House,* 10 *Geo.,* 324; *Cramer vs. Crambough,* 3 *Md.,* 491; *Crowninshield vs. Crowninshield,* 2 *Gray.*)

8. If the defense in a criminal case is that the homicide was accidental, or justifiable, or excusable, or if the defendant sets up the defense of an *alibi,* is not the burden of proof in each case on the government? And if the fact as to whether the homicide was accidental or justifiable, or whether the defendant is the real person who did the deed, is left in doubt, must not the defendant be acquited? It will be conceded that in such a case the prosecution must fail. We fail to see any difference between such a case and a case where defendant's sanity is left in doubt. (*See Fife vs. Commonwealth,* 29 *Penn. S. R.* 429; *French vs. The State,* 12 *Ind.,* 670; *Maher vs. The People,* 10 *Mich.,* 210; 3 *Gr. Ev., p.* 29; *Hall vs. The State,* 8 *Ind.,* 439; *Sumner vs. The State,* 5 *Blackford,* 579; *State vs. Merrick,* 19 *Maine,* 398; *Jones vs. The People,* 12 *Ill.,* 259.)

VI. The court should have granted the motion for a new trial.

1. The court misdirected the jury in a material matter of law.

2. The verdict is contrary to law. (*See authorities cited under our second, third, fourth and fifth points.*)

VII. The court erred in overruling the motion in arrest of judgment.

The indictment does not state facts sufficient to constitute a public offense.

To constitute murder in the first degree, under our statute, it must be perpetrated willfully, deliberately and premeditatedly. It is essential to the sufficiency of an indictment for murder in the first degree, under this statute, that it should contain a distinct averment that the defendant inflicted the wounds willfully, deliberately and premeditatedly. The aver-

ment that the *assault* was made willfully, feloniously, deliberately and premeditatedly, does not import that the *wounds* were given willfully, deliberately and premeditatedly. Consequently, it does not charge a deliberate and premeditated intention to kill. This omission is not cured by the legal conclusions inserted in the concluding part of the indictment.

(*Fouts vs. The State*, 8 *Ohio S. R.*, 98.) In this case the indictment was almost precisely like the one before the court. It charged that the assault was made unlawfully, etc., and that defendant "unlawfully, feloniously, purposely and of deliberate and premeditated malice, did beat, bruise and strike, etc., thereby, then and there giving to him, the said Benjamin P. Scott, one mortal wound of the length, etc., of which said mortal wound, he, the said Benjamin P. Scott, then and there instantly died. And so the grand jurors aforesaid, upon, etc., do say that the said, etc., in manner and form aforesaid, at, etc., unlawfully, feloniously, purposely and of deliberate and premeditated malice, him, the said, etc., did kill and murder contrary, etc."

The court held that this indictment only charged a willful, deliberate and premeditated assault; that it did not charge a willful, deliberate and premeditated design to kill. (*Kain vs. The State*, 8 *Ohio S. R.*, 306; *Robbins vs. The State*, *Ib.*, 131; *Hagan vs. The State*, 10 *Ib.*, 459; *The State vs. Feaster*, 25 *Mo.*, 324.)

We submit that this indictment charges simply that the defendant willfully, deliberately and premeditatedly assaulted and shot James Duke. With what intent the wounds were given, is not charged.

*F. P. Fitzwilliams, Deputy District Attorney*, for appellee.

The defendant in error presents the following authorities to establish the instructions of the court below, in addition to to the reasons given by the court in overruling the motion

for a new trial; and which reasons having been filed in the case, we claim, on behalf of the state, should have been made a part of the record of the case.

The state proposes to consider the question on the instruction of the court on "insanity," and also as to the correctness of the court's ruling on the affidavit for change of venue.

I. Insanity. We cite the following additional authorities to establish the law on this point: (*Archbold's Criminal Pleadings, vol.* 1, *pp.* 6, 7 *note* 1; *Commonwealth vs. Abner Rogers,* 1 *Leading Crim. Cases, p.* 91, *and note, p.* 104; *also vide* 3*d Div. of note, p.* 111-12; *Greenleaf on Evidence, vol.* 2, § 257 *and notes; Wharton's Criminal Law,* 4*th ed., p.* 393, § 711, *and cases cited to sustain, at bottom of page.*)

II. Change of Venue. On this subject we call the court's attention to the following sections of the code of criminal procedure, (*p.* 259, §§ 152, 153.) Affidavit does not show what is required in these. (*See, also,* §§ 154, 155.) No notice was given to the prosecuting attorney, pursuant to this statute. (§§ 156-7-8.) Application was not made during the term at which the indictment was found, nor at the time at which the prisoner was arraigned for trial, nor at the term following the arraignment, and previous to the term at which the application was made. (§ 159, *Laws of Kansas, Terms of Criminal Court.*)

A new trial will not be granted because of strong prejudices against the prisoner existing in the minds of several of the jury in particular. (*Poor vs. Com.,* 2 *Bing. Cas.* 474; *Commonwealth vs. Flannagan,* 7 *Watts & Serg.,* 422.) Nor of a general excitement against him at the time of trial in the community at large. (*Commonwealth vs. Flannagan,* 7 *Watts & Serg.,* 422, *cited in Wharton's Criminal Law, p.* 1141, § 3152; *vide note g; also, id.* § 2940.)

By the Court, COBB, C. J. The appellant was convicted of murder in the first degree at the June term, 1863,

of the criminal court of Leavenworth county. He moved for a new trial; the motion was overruled, and he excepted, and then moved to arrest the judgment, on the ground that the facts stated in the indictment do not constitute a public offense; which motion was also overruled, and he excepted, and brought the cause here for review.

It is claimed by counsel that the indictment does not charge a deliberate and premeditated intention to kill, and is in that respect defective.

We will first examine that question.

Section one of the act regulating crimes and punishments, (*Comp. Laws, p.* 287,) defining murder in the first degree, provides that "every murder that shall be committed by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration of any arson, rape, robbery, burglary or other felony, shall be deemed murder in the first degree;" and as there is no pretence that the killing in question was done by means of poison or lying in wait, or in the attempt to commit any of the other crimes above mentioned, to be murder in the first degree, the killing must have been willful, deliberate and premeditated, and such deliberate and premeditated *will* or *intent* to kill being an essential ingredient in the crime must be alleged in the indictment, else the prisoner is convicted of a crime for which he has not been indicted.

Is it so alleged?

The indictment first alleges a willful, deliberate and premeditated sssault; second, a willful, deliberate and premeditated shooting and wounding; third, that the wounding was mortal, and the wounded man instantly died, and closes as follows: "And the jurors aforesaid, upon their oaths aforesaid, do say that the said Bailey Smith him, the said James Duke, in the the manner and by the means' aforesaid, unlawfully, feloniously, *willfully, deliberately, premeditatedly,* and of his malice afore-

Smith *v.* The State of Kansas.

thought, did kill and murder, contrary to the form of the statute," &c.

The language, taken together, clearly imports that the killing was willful, deliberate and premeditated—the concluding paragraph clearly alleging that the killing, before mentioned, was done willfully, deliberately and premeditatedly.

But it is argued that the last clause, commencing " and the jurors aforesaid, do so say," is a mere legal conclusion, and cannot aid the prior defective statement of fact.

The case of *The State vs. Fouts*, (8 *Ohio S. R.*, 98,) cited to sustain that proposition, differs from the one in question by the concluding clause, commencing with the words, " and *so* the grand jurors," &c., thus indicating that the deliberate and premeditated malice there spoken of was inferred from the facts before stated; but the omission of the word " *so*," would probably have made no difference in the decision of that case.

The common law system of criminal pleading was in force in Ohio, and its principles governed the case, and that formal conclusion of an indictment had been so long in use to express a legal conclusion, derived from the facts already pleaded, as to have acquired an artificial and technical meaning, which would probably prevail without strict regard to the literal signification of the language.

But our code of criminal procedure, (§ 89,) has provided that the contents of an indictment shall be the title of the action, and a statement of the facts constituting the offense, in plain and concise language.

It is also declared, by section eighty-seven of the same act, that " the rules by which the sufficiency of pleadings is to be determined are those herein described." These two sections divest the indictment of all artificial and technical construction, and give to its language its natural and ordinary meaning. In that sense, as we have already seen, the lan-

guage imports that the killing was willful, deliberate and premeditated. The indictment was, therefore, sufficient, and the motion in arrest properly overruled.

Did the court err in refusing to change the venue? Section one hundred and fifty-two of the criminal code provides that "any criminal cause, pending in any district, *may* be removed by the order of such court, or the judge thereof, to the district court of another county in the same district, whenever it shall appear, in the manner hereinafter provided, that the minds of the inhabitants of the county in which the cause is pending are so prejudiced against the defendant that a fair trial cannot be had therein."

Section one hundred and fifty-eight provides that the application shall be sustained by affidavit, &c.

Section one hundred and fifty-eight directs at what stage of the cause the application must be made.

Section one hundred and fifty-nine provides that in case the application is out of time, if the defendant will, in addition to the oath requisite in ordinary and timely applications, swear that the facts on which he grounds his application have first come to his knowledge since the last preceding continuance of the cause, the court *shall* grant a change of venue.

And the law establishing the criminal court of Leavenworth county, (*Compiled Laws*, 348,) makes all laws relative to criminal matters applicable to said criminal court.

The defendant sustained his application by his affidavit, fully conforming to section one hundred and fifty-two, and his application being out of time, swore that the grounds of it have come to his knowledge since the last continuance, thus conforming to section one hundred and fifty-nine. The record does not show that any notice of the motion was given to the district attorney, nor does it show any objection by him to the hearing of the motion for want of notice. If any such objection was made, overruled and excepted to, it should be upon the record. It appears, therefore, that he went into the

argument of the motion without objection, and thereby waived notice, if none had been given.

A party can never be permitted to contest a motion upon the merits without objection to the want of notice, and afterwards avoid the effect of the motion by alleging such want of notice. The alleged lack of notice was, therefore, no reason for overruling the motion.

The defendant, then, having conformed to the statute, in making his application, had the court any discretion to deny his motion?

Section one hundred and fifty-two of the code, above cited, is in terms permissive ; but there are numerous decisions under different statutes granting powers to courts and officers, construing the word, *may*, by which such powers were granted, as equivalent to must or shall. Chancellor Kent, in *Newbury Turnpike Co. vs. Millar*, (5 *J. C.*, 113,) after reviewing the authorities on the subject, says :

"But the principle to be deduced from the cases is, that whenever an act to be done under a statute is to be done by a public officer and concerns the public interests or the rights of third persons, which requires the performance of the act, then it becomes a duty in the officer to do it." (*Mayor, &c., of the City of N. Y. vs. Fain*, 3 *Hill, N. Y.*, 612, and *numerous cases there cited; Cutler vs. Howard*, 9 *Wis.*, 309, and *cases there cited*.)

The doctrine thus laid down by chancellor Kent, it is believed, has never been judicially controverted, and may be regarded as settled.

And the only question arising in such cases is whether the party has a right which requires the performance of the act. Had the defendant a right to a change of venue in this case? Most clearly he had such right, unless the statute has conferred a jurisdiction upon the court, upon some ground and in some manner to decide that one shall have a change of venue, and another shall not, although both have equally

conformed to the law by presenting to the court the evidence which the statute prescribes. No means to discriminate between such cases seems to be given to the court.

The law has required the defendant not to prove to the satisfaction of the court, but to support the allegations of his petition by an affidavit, and we do not see how the court can require more, or discredit the evidence which the statute has precribed.

There is no provision for receiving counter evidence, and if the court is to discredit the defendant's affidavit at all, it must be upon his own personal knowledge of the case ; and had the legislature intended to authorize so strange an anomaly as the decision of judicial questions upon the extrajudicial knowledge of the judge, it is believed such authority would not have been left to doubtful inference, but *expressed* in clear and unequivocal terms.

A comparison of the section under consideration with succeeding ones will throw some light on its construction.

Section one hundred and fifty-three declares that "whenever it shall appear, in the manner hereinafter provided, that the inhabitants of the entire district are so prejudiced against the defendant that a fair trial cannot be had therein, the cause shall, by order of the court or judge, be removed to another district in which such prejudice is not alleged to exist."

This section provides for removing causes from the district for the same reasons and on the same kind of evidence that section one hundred and fifty-two requires for removing them from the coun y.

The two sections are in policy identical. No reason is apparent why the court in one should be clothed with discretionary power, and not in the other; and yet, in section one hundred and fifty-three the language is imperative, the cause *shall* be removed. It is difficult to believe that without any assignable reason the legislature intended to make the right

Smith *v.* The State of Kansas.

to a change of venue absolute in the one case and subject to the discretion of the court in the other.

Section one hundred and fifty-nine, before referred to, providing for cases when the application is out of time, is equally applicable to removals from the county and from the district, and declares, imperatively, that in such cases, if the defendant makes the affidavit therein required, the court *shall* grant a change of venue. This provision, in our opinion, makes it certain that no discretion is given to the court by section one hundred and fifty-two, for it cannot be regarded as the legislative will that timely application for change of venue shall be subject to the discretion of the court, and yet, by delay of the defendant in making the motion, his right to a change of venue shall become absolute. But in this case the affidavit, provided for in section one hundred and fifty-nine, was made, and by the imperative language of that section, the court was required to grant the change of venue, and the refusal to do so was error.

Upon the several exceptions taken by the appellant to the charge of the court below, after much consultation, the court is so divided in opinion as to be unable to settle the questions thereby raised.

For the errors of the court in denying a change of venue, the judgment must be reversed and the case remanded.

BAILEY, J., concurring.
KINGMAN, J., dissenting, as to change of venue.