HENRY D. B. CUTLER, Guardian of Sarah Louise Cutler, *vs.* JACOB M. HOWARD, Executor of Mary P. H. Cutler, Appellant.

9 309
92 672

APPEAL FROM CIRCUIT COURT, DANE COUNTY.

Heard August 16.]                    [Decided October 11, 1859.

*Executors, &c.—Construction—Removal.*

Section 9, chapter 98, R. S., which provides that the county court *may* remove an executor for certain specified causes, is to be construed as giving a discretionary power of removal, and is not compulsory upon the court even though one of the causes may exist.

The word *may* means *must* or *shall* only in cases where the public rights or interests are concerned, or where the public or third persons have a claim *de jure* that the power should be exercised.

By the common law an executor may be an alien, or born and reside out of the king's allegiance, and even an alien enemy, but yet he may be qualified to hold his trust.

This was an application by the respondent to the county court of Dane county, in Probate, praying for the removal of the appellant from his office and trust of executor of the last will and testament of Mary P. H. Cutler, deceased.

The petition of Henry D. B. Cutler, who had been appoint-pointed by the court guardian of the infant child of said deceased, on behalf of said child represented; that Sarah Louise is named as a legatee in the last will and testament of Mary P. H. Cutler, deceased; that on the proof of the will it was ordered by the court that letters testamentary issue to Jacob M. Howard, Meritt J. Cornell and Rebecca Howard; that the order was made on the 22d day of July, A. D. 1858; that Meritt J. Cornell and Rebecca Howard have not qualified as executor and executrix of the will; that on the 11th of August, 1858, Jacob M. Howard duly qualified as executor, and letters testamentary on the estate were on that day duly issued to him; that he was not, on the 22d day of July, 1858, nor is he now, a resident of the state of Wisconsin, but then was, and now is, a resident of the city of Detroit, in the state of Michigan, at which place he now resides.

Cutler vs. Howard.

The petitioner therefore prayed that he may be removed from said executorship, and the letters testamentary be revoked; and that letters of administration, with the will annexed, be issued to such suitable person, or persons, as the court shall direct.

On this petition the court made an order denying the prayer, and requiring the petitioner to pay the cost of the proceeding; from which order the petitioner appealed to the circuit court; and the case coming before that court it was stipulated by the parties herein that the following are the facts upon which the cause was to be tried: The minor is about two or two and one-half years old. The executor is a resident of Detroit, in the state of Michigan, and was at the time letters testamentary issued to him. That said Henry D. B. Cutler was, at the time of presenting this application to the county court, and still is, guardian of the minor; that the minor is a legatee mentioned in the will of the deceased, Mary P. H. Cutler; that most of the estate is in the state of Wisconsin; that the guardian has, with another, executed a bond for the prosecution of a claim against the estate; that since the petition was presented to the county court, the above named executor has commenced two suits against the guardian, one to recover possession of personal property claimed to belong to said estate, and one to recover possession of the real estate claimed to belong to the estate, both of which are now pending; that the testatrix died June 17th, 1858, at Madison, Wisconsin, and that Henry D. B. Cutler is a resident of this state, and father of the minor child.

Upon the hearing of the cause in the circuit court, it was ordered and adjudged, that the order of the county court of Dane county denying the prayer of said petition, dated the 13th day of October, A. D. 1858, be and the same is hereby reversed with costs to be taxed, and that the said Jacob M. Howard, be and hereby is removed from his said trust and office of executor of the last will and testament of said Mary P. H. Cutler, deceased; and it is further ordered that this matter and the judgment of this court herein be certified to the county court of Dane county for further proceedings according to law.

From that order this appeal is taken.

*Carpenter & Sprague,* for the appellant.

*J. C. Hopkins and S. U. Pinney,* for the respondent.

Cutler vs. Howard.

*By the Court*, DIXON, C. J.   This case presents but a single question for our consideration, and because its determination in one way would in effect destroy the right of every citizen making a will to select according to his own judgment the person whom he would have execute it, and to whom he would commit the management of his affairs, and the interests of his family after his decease, it becomes one of vast importance.   It turns upon the meaning of the word " may," as used in § 9, of chapter 98 of the Revised Statutes. Did the legislature intend by it to give the county courts a discretion in the several cases named in the section to remove or not to remove executors ?   Or was it their intention to make it obligatory upon them to do so ?   On the part of the appellant the former proposition is maintained, whilst the respondent's counsel insists upon the latter as the law of the case.   The sense in which this word is to be taken, whether permissive or compulsory in various statutes, has been a fruitful source of difficulty and discussion in the courts and at the bar, both in England and America, and in prosecuting this cause the counsel have saved us much labor and trouble by citing and discussing nearly all the cases which have a bearing upon it.   Looking to the true test of principle involved in it, we think little doubt can remain as to the construction to be put upon the word in the present instance.   It is not contended by the respondent's counsel that the word is not to be understood according to its ordinary grammatical sense, which is permissive merely, unless it falls within the rule of construction, by which it is to be understood to mean *must* or *shall.*

That rule as deduced from all the authorities is, to use the clear and explicit language of Chancellor Kent, in *Newburgh Turnpike Co. vs. Miller*, 5, John. Ch. R., 113, " that the word *may* means *must* or *shall* only in cases where the public in-

terests or rights are concerned ; and where the public or third persons have a claim *de jure* that the power should be exercised." For the complete application of this rule, it only remains to be determined in what cases the rights or interests of the public or third persons are concerned and where they have a claim *de jure* to the exercise of the power; and here fortunately there is no disagreement among the authorities. The cases fully establish the doctrine that when public corporations or officers are authorized to perform an act for others, which benefits them, that then the corporations or officers are bound to perform the act. The power is given to them not for their own, but for the benefit of those in whose behalf they are called upon to act; and such is presumed to be the legislative intent. In such cases they have a claim *de jure* to the exercise of the power. But where the act to be done is not clearly beneficial to the public or third persons, the exercise of the power is held to be discretionary.

This doctrine will be sufficiently illustrated by a reference to a few of the cases.

In *Rex vs. Barlow*, Salk., 609, the church wardens and overseers were held liable to indictment for not making a rate for the reimbursment of constables under 14 Car. II. Ch. 12, § 18. The words of the statute were, " shall have power and authority to make a rate," and were held obligatory. The constables had a claim *de jure* to be paid for their services. The mode prescribed by law for discharging it was by making the rate, and without the exercise of the power by the church wardens and overseers they would have been remediless. So in *Alderman Backwell's Case*, 1 Vern., 152, it was held that the chancellor was bound to grant a commission of bankruptcy on proper application and proof, though the statute said " *may* grant," because the creditors had an interest in the application of the power. They were *entitled by law* to a just and equal distribution of the bankrupt's assets

in payment of their debts, which could be obtained only by the isuing of the commission. The same is true of the case of *The King vs. The Mayor and Jurats of Hastings*, 16 E. C. L., 23, where the public had a direct interest in the holding of the court for the administration of justice; as also, in *Regina vs. Tithe Commissioners*, 68 E. C. L., 474, where " the thing to be done " was " for the public benefit," and " in advancement of public justice."

In the case of *McDougal vs. Patterson*, 73 E. C. L., 755, which may be regarded as the leading modern English decision upon the question, the court having determined that upon a fair construction of the statutes upon the subject, the plaintiff was legally entitled to his costs in the action, and very properly held that the word *may*, in the 13th section of the county courts extension act, 13 and 14 Vic. C. 61, which provided, in such a case, that the court, or judge at chambers *might* by rule or order direct that the plaintiff recover his costs, was not used to give a discretion, but to confer a power upon the court or judges, which they were bound to exercise, for the reason that without its exercise the plaintiffs rights could not be enforced.

So too in the case of *The Mayor vs. Furze*, 3 Hill, 612, the plaintiff as well as the public having a direct interest, that the basins, culverts and sewers should be kept in proper condition and repair, and the mayor, aldermen and commonality, being clothed by statute with the sole power to keep them so, it was held that the execution of the power might be insisted on as a duty, although the word *may* instead of *shall* or *must* was used in the statute.

Without referring specifically to any of the other numerous cases to be found in the books upon this subject we will venture the assertion that upon examination they will all be found fully to sustain the doctrine above laid down. Now, to apply this doctrine to the case before us, it may be asked

Cutler vs. Howard.

what interest has the infant legatee under the will, whom the respondent represents, in the removal of the appellant from his office of executor ?   Or how is she to be benefitted by it? As the case stands here we cannot possibly see that she has any interest in, or that she is to be benefited either directly or indirectly by his removal.   It is not alleged against him that he is an incompetent or improper person to act as executor, nor that he has been guilty of any default or misfeasance in the discharge of his duties ; but the sole reason urged for his removal is that he resides in the state of Michigan, instead of Wisconsin.   It was not claimed in argument, nor could it well have been, that there is any provision of statute aside from the section under consideration when interpreted according to the views of respondent's counsel, from which the remotest inference can be drawn, that the legislature intended that mere non-residence should operate to disqualify an executor from assuming and discharging his trust.   The ample security which he is required by statute to give for the faithful discharge of his duties, and the power of the court to prevent future acts of mal-administration by removing him in case of a wilful breach of duty or violation of its orders, seem to remove nearly all the objections growing out of non-residence, and to make him as a matter of fact equally as competent to execute the trusts as if he were a resident of the State.   It was not contended, nor does it appear that the legatee has any rights which may not be equally as well protected and enforced without as with the appellant's removal, nor that such removal would be in any way beneficial to her, and if so the case does not fall within the rule.   If on the other hand she had any rights which could not be enforced without such removal, the rule of construction might be different.

With a few remarks in relation to non-resident executors, we will close an opinion which has already gone to too great

a length. By the common law it is no objection to an executor that he is an alien, or born out of the king's allegiance, or that he is an alien enemy even, 1 Williams on Executors, 187, and note *b*. His residence in a foreign country does not disqualify him. We regard this liberal and beneficial common law doctrine, and the rights flowing from it, as too sacred to be swept away by *construction*, unless it appears that the legislature clearly intended it. Instances will readily suggest themselves where it would be obviously oppressive and unjust to require a testator to entrust the care of his property and the interest of his family to the hands of a stranger, of whose character he is entirely ignorant.

The inference to be drawn from the section under consideration is, that non-residents may act as executors. The language is, " if any executor shall reside out of this state," clearly indicating that a non-resident may be appointed. If the language was " if any executor shall *remove* out of this state," it would better serve to sustain a different conclusion. Thus it appears that it was the intention of the legislature to leave the testator free to select his executor, and if he is a non-resident, that he may qualify and act, yet if the respondent's position be correct, it becomes the imperative duty of the court, on the application of any person interested in the estate to depose the executor of the testator's choice, regardless of his conduct or qualifications and interpose in his place perhaps an entire stranger, who has no interest or sympathies in common with the deceased or his surviving friends. Such a construction makes the legislature declare, and defeat their intention by the very same words.

In view of the manner in which our county courts are organized, the nature and extent of their jurisdiction and powers, and facilities afforded by appeal to correct any errors or mistakes which they may make, we are of opinion that the word *may* is used in the section under consideration, to con-

fer upon them discretionary powers in the cases therein provided for. The argument drawn from the supposed case of an abuse of this power, by the refusal to remove an executor who was insane or otherwise incapable of discharging the trust, would, if allowed, in most instances operate to destoy all discretionary power, inasmuch as such a power in the hands of an evil disposed person is always liable to be perverted. Such cases, however, are not to be presumed. If they should arise, a ready remedy is offered by appeal. Cases may arise where the distance between the place of residence of the executor and the court where the business is to be transacted, may be so great as to render it inconvenient and impracticable for him to act, and call for the exercise of this discretionary power of removal. Such, however, is not the present case.

The judgment of the circuit court is reversed, and that of the county court affirmed.