## HALL vs. HALL.

RESIDENCE — DIVORCE: *What facts will show plaintiff in divorce suit to have acquired a sufficient residence.*

1. The "residence" of one year required of plaintiff in divorce, to give the court jurisdiction, is such as would subject him to taxation, and to the service of process in this state.
2. Plaintiff, on a certain day, engaged with a householder in a village of this state "for a room, and to stop with him," but left the same day without occupying the room, and did not return for several months, traveling, and being out of the state a considerable part of the time. *Held,* that he did not acquire a residence before such return.

PAINE, J., *dissenting,* is of opinion that plaintiff's actual presence in said village, with the fixed intention of becoming from that time a resident thereof, constituted it his residence; and that his subsequent absence on business, with the constant intention of returning, did not deprive him of such residence.

APPEAL from the Circuit Court for *St. Croix* County. Action for a divorce by *Chapin Hall* against *Susan*

*Hall*, commenced July 27, 1867. The finding of the court states that the parties had been married, and had lived together until October, 1857; that they "have voluntarily lived entirely separate for five years next preceding the commencement" of this action;* and that plaintiff "has been a resident of this state, and was a resident thereof for one year prior to and preceding the bringing of this action."

Judgment for a divorce was accordingly rendered in plaintiff's favor. The defendant excepted to the several findings of fact and conclusions of law, and appealed from the judgment.

The substance of the evidence for plaintiff on the question of residence is stated in the opinion.

*J. S. White*, for appellant, to the question of residence, cited *Roosevelt v. Kellogg*, 20 Johns. 210; 4 Barb. 504, 520–522; *Haggart v. Morgan*, 1 Seld. 422, 428; 2 Bishop on M. & D., § 117. 2. The finding as to plaintiff's residence was insufficient to sustain the judgment, because it did not state that such residence was for a year *immediately* preceding the commencement of the action. 3. To entitle a party to a divorce under the act of 1866, the five years of entire separation must be wholly *subsequent* to the passage of the act. 11 Wis. 423; 15 id. 549; 21 id. 270; 1 Bishop on M. & D. 99; *Clark v. Clark*, 10 N. H. 380; *Jarvis v. Jarvis*, 3 Edw. Ch. 462; 27 Me. 212; 6 Greenl. 210; 12 N. H. 200. 4. The decision by a divided court in *Manly v. Manly*, 4 Chand. 96, reluctantly followed in *Hubbell v. Hubbell*, 3 Wis. 662, is founded upon the theory that there had been a *wrong* committed by the defendant. But it is admitted in this case, that, during all the time these parties were separated, it was legal in New York and Pennsylvania (where

---

* Chap. 37, Laws of 1866, provides that "whenever the husband and wife shall have voluntarily lived entirely separate for the space of five years next preceding the application for divorce, the same may be granted on the petition of either party."

they resided) for husband and wife to voluntarily live separate; and it is a well recognized rule that they may legally do so. 1 Bishop, 578. The law, then, if retrospective, declares that five years' lawful conduct shall be a cause of divorce.*

*H. C. Baker*, for respondent, as to the effect of defendant being domiciled in another state, where five years voluntary separation is not a cause for divorce, cited 1 Bishop on M. & D. 143 *et seq.; Hubbell v. Hubbell*, 3 Wis. 662. As to the retrospective operation of the act of 1866, he cited 1 Bishop, 98, 103, 696 and 699, and relied upon *Phillips v. Phillips*, 22 Wis. 256. He also contended that the evidence made a clear case of residence in this state by plaintiff for the time prescribed by statute.

*P. L. & J. C. Spooner*, of counsel, on the same side, to the point that a statute authorizing divorces for some new cause, which was expressly made applicable to past transactions, would not for that reason be void, and that if silent upon the point of its applicability to matrimonial offenses already committed, it should be applied to past offenses, cited 1 Bishop on M. & D., §§ 98–103, 696–699; *Smith v. Smith*, 3 S. & R. 248; *West v. West*, 2 Mass. 223; *Stevens v. Stevens*, 1 Met. 279; *Pidger v. Pidger*, 3 id. 257; *Brett v. Brett*, 5 id. 293. To the point that the language of the act of 1866, "*shall have* lived," does not imply a separation for five years wholly subsequent to the passage of the act, counsel cited R. S., ch. 111, sec. 9, subd. 6, and secs. 12 and 13. But the law of 1866 has not made any new matrimonial *offense*. Where the separation is by consent, neither party can complain

---

* The importance of the question here raised upon the construction of the statute has been thought to justify an outline of the argument thereupon, although the question is not considered by the court in this case. In *Phillips v. Phillips*, 22 Wis. 256, which was brought in 1867, this court held that the evidence showed such a voluntary separation as entitled the plaintiff to a divorce under the act of 1866; but it does not appear that the question here raised was discussed in that case.—REP.

of it.   Nor does the law proceed upon the idea that the marriage relation should be dissoluble at the will of the parties to it.   The theory of the law is this : That the mere fact that married persons have voluntarily lived entirely separate for five years is evidence that the public good and justice to the parties themselves would be subserved by a dissolution of their marriage relation. The law assumes that in such a case the relation has ceased to subserve the ends for which it was created. Beyond those grounds for divorce which the law may easily define (adultery, desertion, cruelty, imprisonment for crime, habitual drunkenness, and the like), there are others uncertain and shadowy.   "There are smothered hatreds, jealousies which no reason can allay, an undefinable jarring of natures coming into collision, and other purely mental causes, which render the marriage burdensome, and destroy its higher and holier purposes." In many of the states courts are enabled to take cognizance of these, and grant divorces therefor, under a general authority ; as in Maine, "when, in the exercise of a sound discretion," the court "deems it reasonable and proper, conducive to domestic harmony, and consistent with the peace and morality of society ;" or, as in Iowa, where the fact appears "that the parties cannot live together in peace and harmony, and that their welfare requires a separation ;" or, as in Connecticut, for "any such misconduct as permanently destroys the happiness of the petitioner and defeats the purpose of the marriage relation."   But this general power has been found liable to abuse, and it has happened that in some courts divorces were granted, and in others of the same state denied, under the same circumstances.   Our statute, with better reason, withholds from the courts any such general discretion, and accepts as proof of the inability of the parties to fulfill toward each other the duties of the marriage relation, the fact that they have voluntarily lived apart for five years, and accepts no less conclusive proof.   It is manifest that

five years voluntary separation *before* the passage of the law furnishes stronger proof of the unfitness of the parties to fulfill the duties of the marriage relation toward each other, than five years separation *after* its passage, since in the former case the prospect of a divorce could not have had any influence in causing or prolonging the separation. Separations which began before the passage of the law are therefore more clearly within the r ·ason of it than those which began after its passage. It is settled in this state that our court may grant a divorce although the defendant has never resided in this state, and although the act which constituted the cause for the divorce was committed in another state, if the cause be an adequate one under the laws of this state. 1 Chand. 280 ; 4 id. 96 ; 3 Wis. 662 ; 4 id. 64. The only reason for confining the application of the act of 1866 to subsequent separations would be, that one of the parties to a separation might not have consented to it, if it had been known that it would form, in the whole or in part, a ground for the dissolution of the marriage bond. But evidently the same reason could be given for not granting a divorce to a citizen of this state for a matrimonial offense committed in another state, by whose laws it was not a ground of divorce. 2. The *place* where the separation took place is not material. If the living separate was to be regarded as a matrimonial offense, it would not be material where it occurred. 3 Wis. 662. If it is regarded by the law only as evidence that the parties are incapable of fulfilling toward each other the objects of marriage, then such separation, begun and continued in a place where it was not recognized as ground for a divorce, would furnish stronger evidence of such unfitness than one begun in this state after the passage of the act in question.

COLE, J. This action was commenced on the 27th day of July, 1867, by the respondent, for the purpose of obtaining a divorce from the bonds of matrimony. The

Hall vs. Hall.

ground of divorce relied on is, that since the month of October, 1860, the parties have voluntarily lived entirely separate, and without any cohabitation as husband and wife. Previous to October, 1860, the parties had resided together in Warren, Pennsylvania, where they voluntarily separated. The defendant is now, and has been since 1864, a resident of Busti, in the state of New York.

The first objection taken to granting the divorce, and one which goes to the very foundation of the proceedings, is, that the evidence in the case shows that the respondent had not been a resident of this state for one year prior to the commencement of the suit. Our statute enacts that no divorce shall be granted unless the petitioner or plaintiff shall have resided in this state one year immediately preceding the time of exhibiting the petition or complaint, with certain exceptions which have no reference to, or do not affect, this case. Sec. 12, chap. 111, R. S. The inquiry which meets us at the outset, then, is, Does the evidence show that the respondent had resided in this state one year preceding the commencement of the suit? And this inquiry must be answered entirely upon the facts stated in the respondent's own testimony given on the trial. That portion of it bearing upon the question of his residence in this state prior to July 27, 1867, is substantially as follows. He says: "I came to Hudson on the 20th day of July, 1866, with the intention of making it my residence from that time; I arranged on that day with Mr. Baker as to purchasing pine land here; I went away the same day I came; I came back in the fall — last of October; in October I arranged to purchase the lots on which is built the hotel; went to Louisville to look after some debts there; was in Louisville a good deal of the time; was in Warren part of the time; prior to coming here in July I had lived in Warren; had so lived seven or eight years; in Warren I was stopping with my daughter, and had a room there; I take all my things with me when I travel; when I left there I took no more

than I usually do when I travel; I left Warren about four weeks prior to my coming to Hudson; did not take up my abode in any other place prior to coming to Hudson; I was looking up an abode; it was my object in starting from Warren to look up a place of abode; I went from Hudson to Fond du Lac; was there but a short time; went from there to Milwaukee, and from there to Madison; and from there I think I went to Louisville. I have done business in Louisville for thirty years. I had some lumber there, and some debts to look after; my stopping in Louisville was irregular; I had some real estate there, and I put up tenement houses to rent; I have no residence there, and have made no arrangements to make a residence there. I stopped at a hotel when here in July, 1866; made arrangements with Mr. Baker to sleep with him, and was to have a room there; I spoke to Mr. Baker that day about a divorce; I told Mr. Baker that I was looking for a place where the divorce laws were liberal; that I wanted to live in a state where the divorce laws were liberal, and where money could be invested to advantage, and where I could do business. I resided in Fond du Lac sixteen or seventeen years ago. I simply engaged with Mr. Baker for a room; I don't think I went into the room I engaged of him; did not occupy it that day; I occupied the room in the month of October, and boarded with Mr. Baker; was here two weeks in October; was here in the winter again; I made arrangements in November to build a hotel in Hudson; I paid Mr. Baker $60 a year for the room."

I have endeavored to quote accurately, and *in extenso*, all the testimony given by the respondent, either upon the cross or redirect examination, which tends to throw any light upon the question as to when his residence commenced in this state. A residence in the state one year immediately preceding the application is indispensable to found a jurisdiction in the case. Was, then, the

respondent a resident within the state for one year prior to July 27, 1867, within the meaning of the statute?

Upon the facts it seems to me this question must be answered in the negative.

If the question were to be decided wholly upon the intention of the respondent, without reference to the fact of actual residence, there would be good ground for holding that he became a resident on the 20th day of July, 1866. But it seems to me it will not do to rest the decision entirely upon the intention and purpose of mind of the respondent to change his residence to this state. The intent and fact of residence must concur. "Residence," says Webster, "is the act of residing, abiding, or dwelling in a place for some continuance of time." Another definition given by him is, "the place where one resides." "Residence," says Burrill, is "the act or state of being seated or settled in a place; the act, state or habit of dwelling or abiding in a place; the act or state of being a resident, or inhabitant; inhabitancy or habitancy. The place where one resides, habitation; domicil." 2 Law Dic., word "Residence." Bouvier defines the word "residence" as "the place of one's domicil." "There is a difference," he adds, "between a man's residence and his domicil. He may have his domicil in Philadelphia, and still he may have a residence in New York; for although a man can have but one domicil, he may have several residences. A residence is generally transient in its nature; it becomes a domicil when it is taken up *animo manendi.*" 2 Law Dic. This distinction between domicil and residence is likewise taken in *In re Thompson*, 1 Wend. 43; *In re Wrigley*, 8 id. 134; *Frost v. Brisbin*, 19 id. 11; *Chaine v. Wilson*, 8 Abb. Pr. 78; *Foster v. Hall*, 4 Humph. 346. Chancellor Kent says, "that a man can have but one domicil for the purpose of succession. He cannot have more than one domicil at the same time, for one and the same purpose; and

every person has a domicil somewhere. A person being at a place is *prima facie* evidence that he is domiciled there; but it may be explained, and the presumption rebutted. The place where a man carries on his established business or professional occupation, and has a home and a permanent residence, is his domicil." 2 Kent, 431, margin. In *Cranford v. Wilson*, 4 Barb. S. C. 504, is a very full and instructive 'discussion of the question of residence and domicil, and of what facts go to constitute them. That was an action for slander, which, in its consideration, involved the question whether a party had the right to vote at a school district meeting. Mr. Justice PAIGE, in his opinion, cites a great number of authorities, giving definitions of the terms "residence," "inhabitancy" and "domicil," and deduces the proposition that the terms "legal residence," or "inhabitancy," and "domicil," mean the same thing. "By legal residence," he says, "I mean the place of a man's fixed habitation, where his political rights, such as the right of the elective franchise, are to be exercised, and where he is liable to taxation. A person leaving such place of fixed habitation or abode temporarily, as for a particular purpose, either for business, pleasure or health, with the intent of returning to the same as soon as such purpose is accomplished, does not lose his residence or habitancy in such place of abode." P. 522.

Our divorce statute furnishes no particular definition of the language, "the plaintiff shall have resided in this state one year immediately preceding the time of" applying for a divorce. But I can but think it means that the plaintiff shall, in fact and intent, have an established home in the state for the preceding year — a place where he lives and has an abode ; where he would be liable to taxation ; where service of process of court could be had upon him by copy ; and where he has an actual habitation and residence. It seems to me that it could hardly be said, in the event a suit had been commenced against

Hall vs. Hall.

the respondent on the 21st of July, 1866, that the court, would have acquired jurisdiction of his person by the service of summons by leaving a copy with Mr. Baker, at his residence in Hudson, for he had no residence there at that time. He had formed the intention to make that place his permanent residence, but as yet no corresponding change of inhabitancy had actually been made. The counsel for the respondent concedes the rule to be, that a mere intention to change one's domicil does not change it, but that the intention and act must concur. But he argues that because the respondent left Warren for the purpose of finding a new home, and went to Hudson with the intention of making it his residence from that time, that Hudson then and ever since has been his residence. But he came to Hudson and left the same day, not returning till the last of October; he simply engaged with Mr. Baker "for a room and to stop with him" at some future time, but he had acquired no home there as yet—no residence; did not in fact live there until the next fall; had no place of business—no abode—there, any more than a transient visitor to the place. "There must be a settled, fixed abode, an intention to remain permanently at least for a time, for business or other purposes, to constitute a residence within the legal meaning of that term." C. J. NELSON, in *Frost v. Brisbin*, *supra*. He had at this time a fixed and decided domicil at Warren, where he had lived for years; and what he did at Hudson on the 20th of July was not, in my opinion, sufficient to show a change of his residence and domicil, and an acquisition of one at Hudson. I do not, therefore, think that within the contemplation of the divorce statute it can fairly be held that the respondent had been for more than a year prior to July 27, 1867, a resident of the state. I am of the opinion that the judgment of the circuit court must be reversed, and the cause remanded with directions to dismiss the complaint.

DIXON, C. J., concurred with Mr. Justice COLE.

Vol. XXV. — 39

PAINE, J., *dissenting.* The court does not find as matter of fact that the plaintiff did not, in July, 1866, select Hudson, in this state, as his residence, and intend from that time to reside there. He swears positively that he did. Of his competency as a witness upon this point there is no doubt; and although a party might be so contradicted by circumstantial evidence as to warrant a court in disbelieving his statement in regard to his intention, yet there are no such circumstances presented here. It is true that he went away immediately. But his absence was of no different character or extent than was natural in view of his business; and his subsequent conduct in perfecting his arrangements for residence here, and entering upon investment and improvement, fully confirm his direct evidence as to his intent, and show that his absence, after first selecting his new residence, was temporary, and furnishes no ground for assuming his intention to have been at all different from what he states. This being so, I cannot assent to the conclusion of law at which the court has arrived. The legal rule of their decision, as I understand it, is, that although a man may actually be present in this state, and may select a place as a residence, and intend from that time to reside there, yet if he goes away upon business, although intending to return, he cannot be held to be a resident of this state, unless he leaves behind him here such external evidences and indications of residence as would at all times enable the court to find the fact independent of his testimony. I do not think there is any other case that establishes such a rule. On the contrary, the authorities seem to be uniform to the effect that personal presence in a place, coupled with an actual intent to reside there from that time, constitutes such place a residence. And no mere temporary absence from that residence, so long as the party really regards and considers it his residence, deprives it of that character. In *Hulett's Adm'rs v. Hulett,* 37 Vt. 581, this subject was very fully considered. The court says: "In

determining the character of a person's residence in a particular place, and with what intent such residence began, its duration is a most important element, and has always been so considered in all the cases upon this subject. One may take up his residence in a place, and have a fixed residence or domicil while he remains, though it be but for a very short period of time, *even for a single day.* On the other hand, one may remain for a long time in a place without having it become his domicil, and be all the while a mere temporary sojourner. But where one's stay in a place is short, and then he returns to his former home, it affords some presumption that he went there for a temporary purpose, with no intent to remain; while, if his stay or residence is protracted and long continued, it furnishes a corresponding presumption that he designed to remain from the beginning. Other facts and evidence may overcome the presumption in either case, and show that the short stay was of a legally permanent character, and that the longer one was but a mere absence from home, working no legal change of residence."

In this case the subsequent facts are entirely satisfactory to give to the plaintiff's short stay, in July, the "legally permanent character" of a residence, and to show that his absence, immediately succeeding that time, was temporary, and worked no change of such residence.

In Massachusetts, under a statute which required every person to be taxed in the town where he was an inhabitant on the first of May, it was held that a party, who on that day was out of the state journeying to a new residence in Pennsylvania, to which state he had not yet arrived, was not taxable, being no longer an inhabitant. *Colton v. Inhabitants of Longmeadow,* 12 Allen, 598.

In *Bulkley v. Inhabitants of Williamstown,* 3 Gray, 493, the court states the rule as follows: "The general rule, and for practical purposes a fixed rule, is, that a man must have a habitation somewhere. He can have

but one; and, therefore, in order to lose one, he must acquire another. This is the test, the practical test, and it is hardly necessary to say how important it is to have a practical rule and a general rule. One of the fixed rules on the subject is this: that a purpose to change, unaccompanied by actual removal or change of residence, does not constitute a change of domicil. *The fact and the intent must concur.* He must remove without the intention of going back. The question here is, whether he can abandon one without acquiring another, and we think it has always been held that he cannot. If he goes into another state, and returns for his family, his *personal presence there, concurring with the intent, may fix his domicil there.* But if he has not previously removed to the other state, he has not acquired a domicil there, or lost one here."

Putting the doctrine of these two cases together, it would follow that in the first one the court must have regarded the plaintiff as a resident of Pennsylvania on the first of May, although he had not yet arrived there at all, upon the ground that he had abandoned his old residence with the intention of residing there. In the latter case, they expressly say that the personal presence of a man in another state, concurring with the intention to reside there, may fix his domicil there, although he returned for his family.

But our court says, that a man's personal presence here, concurring with an intention to reside here, does not fix his residence here, unless he establishes such external indications of that intention as would, from the inception of his residence, be continuously sufficient to establish the fact to the satisfaction of a court, independently of his own testimony. I cannot think such a rule would be held in any other action than one for a divorce; and I do not feel at liberty, because the action is of that character, to introduce any new elements into the law of residence.

*By the Court.* — Judgment reversed, and cause remanded with directions to dismiss the complaint.