## DUTCHER VS. DUTCHER.

DIVORCE: RESIDENCE OF PLAINTIFF: LIMITATION OF ACTION: PLEADING: JUDICIAL DISCRETION IN DIVORCE: COSTS. *(1-3) Length and character of residence required of plaintiff in divorce. (4-7) Nonresidence a personal disability. How pleaded. (8) Statutory limitation of the action. (9, 10) How limitation to be pleaded. Effect of general denial under the code. (11, 12) Judicial discretion in aid of the policy of divorce statutes. (13) Rules of pleading and practice relaxed only to protect public interest. (14) Costs.*

39 651
82 350
39 651
92 672
39 651
93 266
39 651
97 101
39 651
106 561
39 651
59 LRA 149

1. Sec. 12, ch. 111, R. S., rests jurisdiction of actions for divorce in this state upon the residence of *the plaintiff* alone, and requires the plaintiff to have resided here one year immediately preceding the suit, except when the suit is for adultery committed while the plaintiff is a resident here, and when the marriage is solemnized here and plaintiff continues to reside here until suit brought.

2. The legislature, in enacting this statute, was legislating for the citizens of this state, and not for others; and the residence required by it must in each case be actual and *bona fide, animo manendi;* such a residence as, continuing for a year, would make a man a qualified elector of the state.

3. The rule that the domicil of the wife follows that of the husband, is inapplicable, at least under our statute, to a case of divorce, where the parties are actually living in different jurisdictions; and the fact that the husband's domicil has been in this state for many years will not enable the wife to sue for a divorce here, if she has continued to live in another state.

4. In such an action the plaintiff's want of residence under the statute is a *personal disability*, which may be cured, and is matter in *abatement* and not in bar of the action.

5. Under the code, matter of abatement and matter of bar may be set up as separate defenses in the same answer; but neither the distinction between the two kinds of defense, nor the legal effect of judgments upon them respectively, is affected by the code.

6. If matter of abatement, not apparent in the complaint, is relied on as a defense, it must be *specially pleaded* in the answer (R. S., ch. 125, secs. 5, 8), and a mere general denial is not sufficient.

7. Even if a defense in divorce on the ground of plaintiff's nonresidence were in the nature of a plea to the *jurisdiction*, it would have to be pleaded *specially*.

8. Subd. 3, sec. 13, ch. 111, R. S. (which provides that in any action brought for divorce on the ground of adultery, although the fact of adultery be established, the court may deny a divorce "when there shall have been no express forgiveness and voluntary cohabitation of the parties, but the action shall not have been brought *within three years* after the discovery by the plaintiff of the offense charged"), was copied in 1849 from the revised statutes of New York of 1829 (except that *three* years are substituted for *five*); and was taken here with the settled construction previously given it by the courts of New York. And where the plaintiff knew that the defendant was living in open and continuous adultery with another person more than three years before action brought, the right to maintain such action is barred, although such adulterous intercourse is continued down to the commencement of the action; such having been the settled construction of the statute in New York, before its adoption here.

9. Where, however, the existence of such statutory bar does not appear from the complaint, it must be pleaded by the defendant in his answer, as new matter, and he cannot avail himself of it under a general denial.

10. As a rule, a general denial under the code is a mere traverse, in bar, of the facts pleaded in the complaint, and does not admit special defenses in abatement or in bar.

11. In suits for divorce (especially under the statute of this state, which gives divorce as a right only so far as the right is to be implied from the grant of jurisdiction to the courts, which is in terms permissive only), the court will exercise a judicial discretion in accordance with the policy of the statute, and will withhold judgment of divorce in cases not within the statute upon their merits.

12. Hence, it appearing conclusively in this case that the plaintiff had not such a residence here as the statute requires, and it also appearing, but not so conclusively, that she had notice of the defendant's adulterous cohabitation with another person more than three years before suit brought (although neither fact is pleaded specially as a defense in the answer, so that, in a mere question of private right between the parties, defendant

Dutcher vs. Dutcher.

could not take advantage of either), the judgment in plaintiff's favor is reversed, with directions to the court below to permit the answer to be amended, or to consider it as amended on the trial, so as to raise the defense in abatement, and to dismiss the complaint on the sole ground of plaintiff's nonresidence at the commencement of the suit.

13. *As between the parties*, the rules of pleading and practice will be enforced in divorce suits as in other cases; and they will be relaxed in such suits only when the public interest is involved.

14. The *costs* in this court and the court below are required to be paid by the defendant, who is the appellant.

APPEAL from the Circuit Court for *Ozaukee* County.

Action commenced in July, 1874, for a divorce on the ground of adultery, alleged to have been committed at various times between June 26 and July 6, 1874. The answer was a general denial. The plaintiff testified, in substance, that she and the defendant were married in 1862, in New York, where the parties lived for about two years, when the defendant left her and came to Wisconsin; that she knew where he was living in Wisconsin, and had his address; that before he left New York in 1864, and while the person with whom adultery was charged in the complaint was a servant in their house, the plaintiff observed improper familiarities between them, and that such person had accompanied the defendant when he left New York for the west; that plaintiff had lived with her mother in New York most of the time since 1864, and made that place her home until June, 1874, since which time she had resided in Wisconsin; that before coming to Wisconsin she had correspondence with her attorney respecting the suit for divorce, and that she came here to attend to that and for no other purpose; that she had been stopping at Milwaukee and Port Washington, and in Walworth county; that she had intended to pay her board, and had been with her relatives and in the family of her attorney, and had been treated as a guest; that her mother's house was her home, and the only home she had, and for that reason she had left her son there; that at the time of the trial she had no definite purpose as to

going back to New York; she intended to go back, but might stay there, and might not; that she had previously intended to go back; that she had commenced a suit for divorce against the defendant a few months after he left New York, charging him with adultery with the same person as in this case, but that said action was not prosecuted to judgment. Considerable testimony was introduced on the part of the plaintiff, respecting the charges made in the complaint, and respecting the amount of defendant's property. The defendant introduced, with other evidence, the record of the action commenced in New York in 1865, from which it appeared that in that action the plaintiff charged the defendant with having lived in open adultery in Sheboygan county, Wisconsin, with the same person above referred to.

Judgment for plaintiff; from which defendant appealed.

*J. C. Gregory*, for appellant:

1. The courts of this state are not authorized to grant divorce to a plaintiff who has never been a resident of the state, or who was not a resident at the commencement of the action. And the residence required to give jurisdiction must be intended by the petitioner to be a permanent one, *bona fide*, *animo manendi*, and not a transient sojourn. *Williamson v. Parisien*, 1 Johns. Ch., 388; *Smith v. Smith*, 4 Greene (Iowa), 271; *Hinds v. Hinds*, 1 Iowa, 36, 49; *Spragins v. Houghton*, 2 Scam., 377; *Fry's Election Case*, 71 Pa. St., 302; *Thompson v. The State*, 28 Ala., 12, 21; *Reeder v. Holcomb*, 105 Mass., 93; *Brown v. Ashbough*, 40 How. Pr., 260; *Winship v. Winship*, 16 N. J. Eq., 107; 1 McCarty, 79. The words *domicile, residence,* and *inhabitancy,* mean the same thing; that is, a fixed abode in a place with an intention of always remaining there. *Crawford v. Wilson*, 4 Barb., 518; 2 Bishop on M. & D., ch. 8; *Case v. Clarke*, 5 Mason, 70; *Shelton v. Tiffin*, 6 How. (U. S.), 163; *Hall v. Hall*, 25 Wis., 600. 2. The jurisdiction of the court in divorce cases depends upon the residence of the plaintiff, whether the plaintiff be

Dutcher vs. Dutcher.

husband or wife. *Manley v. Manley*, 4 Chand., 96; *Hubbell v. Hubbell*, 3 Wis., 662; *Gleason v. Gleason*, 4 id., 64; *Shafer v. Bushnell*, 24 id., 372; R. S., ch. 111, sec. 12. The court possesses no power over the subject of divorce, except such as is conferred by statute (*Barker v. Dayton*, 28 Wis., 379), and can take jurisdiction of the subject only when the fact of plaintiff's residence is shown. *Bennett v. Bennett*, 28 Cal., 599; *Ewing v. Ewing*, 24 Ind., 468; *Goldbeck v. Goldbeck*, 3 C. E. Green (N. J.), 42. The objection to the jurisdiction can be made at any stage of the proceeding. *Dewey v. Hyde*, 1 Pin., 470; *Congar v. R. R. Co.*, 17 Wis., 485; R. S., ch. 125, sec. 9. And when the want of jurisdiction appears, the court must refuse to proceed. *Bennett v. Bennett*, 28 Cal., 599; *People v. Dawell*, 25 Mich., 247. It is plainly the policy of our statute to exclude from the courts of this state all suits for divorce in behalf of persons not *bona fide* residents of the state. Consent of parties cannot give the court jurisdiction of the subject matter of an action. 1 Wait's Pr., 185, 186; *Beach v. Sumner*, 20 Wis., 274. The question of jurisdiction does not pertain to the parties; it concerns the policy of the state and the administration of justice. 3. In actions for divorce, the residence or domicil of the wife does not follow, and is not determined by, that of the husband. *Jenness v. Jenness*, 24 Ind., 355; *Yates v. Yates*, 2 Beas., 280; *Schonwald v. Schonwald*, 2 Jones' Eq., 367; *Harteau v. Harteau*, 14 Pick., 181, 185; *Payson v. Payson*, 34 N. H., 518; *Hopkins v. Hopkins*, 35 id., 474; *Harding v. Alden*, 9 Greenl., 140; *Thompson v. The State*, *Hubbell v. Hubbell*, and *Shafer v. Bushnell*, *supra*; *Phillips v. Phillips*, 22 Wis., 256; *Craven v. Craven*, 27 id., 418. 4. The general denial was sufficient to raise the issue as to residence, this being a material allegation of the complaint. R. S., ch. 125, secs. 10, 33; 2 Wait's Pr., 419, 420; *Mattison v. Smith*, 19 Abb. Pr., 288; *Radde v. Ruckgaber*, 3 Duer, 684. The cases cited in respondent's brief to the effect that when a

plaintiff sues in a representative capacity the general denial does not controvert the facts showing such capacity, are not applicable in this case, where an essential element of a cause of action under the statute is wanting. 5. The action was brought too late. R. S., ch. 111, sec. 13. Courts have always refused to grant divorces after the lapse of considerable time, without a fair explanation, on the ground that the delay raises the presumption of condonation or indifference to the offense complained of, amounting to a waiver. 2 Bishop on M. & D., §§ 48, 103, 109; *Fellows v. Fellows*, 8 N. H., 160. It cannot be claimed that the offense for which the divorce is asked was committed within three years; the proof shows it to be a continuous offense within the meaning of the statute of limitations. *Valleau v. Valleau*, 6 Paige, 207.

*G. W. Foster*, for respondent:

1. The derivation of the word *residence*, as well as the manner of its use in our statutes, shows that the word alone does not embrace the idea of any length of time; that it has reference to a present fact, without regard to its continuance any definite length of time. 2 Bishop on M. & D., §§ 118, 120; R. S., ch. 124, sec. 9, and sec. 10, subd. 5; id., ch. 120; id., ch. 34, sec. 2, subd. 4; Const., art. III, sec. 1; 12 Barb., 643; *Hall v. Hall*, 25 Wis. 600; 40 Ill., 197, 204, 205; 2 Jones (N. C.), 51. The word *abide*, which has been held as equivalent to *reside*, has the same meaning. 2 Kings, 19:27; Genesis, 29:14; Shakspeare ("Good Enobarbus, make yourself *my guest* whilst you *abide* here"); 2 Kent, 106; 11 Moak, 873, note. Does not the law intend that if adultery shall be committed while the husband and wife are in this state, the injured party shall have redress by divorce? 2. The residence of the husband, as long as he fulfills his conjugal duties, certainly is the residence of his wife. He cannot profit by living with a paramour. 2 Bishop on M. & D., §§ 126, 127, 149, 150, 155–157, 168; 2 Kent's Com., 431, note (c); 12 Barb., 643; 3 Cal., 312; 15 N. H., 159, 160; 6 Jones, 360–364; Story's Conf., 45, 46;

Dutcher vs. Dutcher.

17 Ill., 476; 30 id., 181; 20 Ala., 629; Lieber's Am. Encyc., "Domicile," Appendix. 3. The defense of nonresidence of the plaintiff must be specially pleaded. The plea is a dilatory one, and not to the action. The general issue waives all dilatory pleas. Gould's Pl. (under the code), ch. 2, secs. 34, 37, 38 and note (VII), 43; 1 Chitty's Pl., 441; Story's Eq. Pl., §§ 706-8; *De Wolf v. Rabaud*, 1 Peters, 476; *Sheppard v. Graves*, 14 How. (U. S.), 505; 3 Abb. Nat. Dig., 493, 494; Conkling's Treat., 375; 1 Kent, 345, 346. The general denial under the code is no broader than the general issue at common law. *Sanford v. McCreedy*, 28 Wis., 103, 106, 107; *Ewen v. Railway Co.*, 38 id., 613-627; *Sweet v. Tuttle*, 14 N. Y., 465; *Gardner v. Clark*, 21 id., 399; R. S., ch. 125, sec. 8, and sec. 5, subd. 2.

RYAN, C. J. We do not understand the appellant's adulterous intercourse with his paramour to be questioned on this appeal. We understand his counsel to rest the appeal on two positions: first, that the respondent is not a resident, within the statute; and second, that she had discovered the adulterous cohabitation of the appellant more than three years before suit brought.

I. We have no doubt of the true construction of sec. 12 of the statute of divorce, R. S., ch. 111, a reënactment of ch. 79 of 1849. Wisely or unwisely, it is the policy of the statute to rest jurisdiction of divorce here upon the residence of the plaintiff alone. *Manley v. Manley*, 3 Pin., 390; *Hubbell v. Hubbell*, 3 Wis., 662; *Gleason v. Gleason*, 4 id., 64; *Shafer v. Bushnell*, 24 id., 372. Sec. 12 requires a residence of the plaintiff for one year before suit brought, except in two instances: first, when the suit is for adultery committed while the plaintiff is a resident here; and second, when the marriage is solemnized here, and the plaintiff continues a resident till suit brought.

The policy of the statute in requiring a year's residence is ob-

viously to secure good faith in the residence of parties coming· from without the state and applying for divorce here. For all grounds of divorce except adultery, whether taking place before or after the residence of a plaintiff coming here, the statute exacts a year's patience as test of the *bona fides* of the residence claimed here. But when so grave an offense as adultery is committed after the plaintiff has acquired a residence here, although for less than a year, the statute does not require sufferance of the offense for the rest of the year. So when the marriage takes place here and the plaintiff remains a resident, though for less than a year, the statute does not require forbearance for the rest of the year. It accepts the peculiar circumstances of these two cases as test of *bona fides·* in lieu of a full year's residence in other cases.

The rule is familiar that the words *reside* and *residence*, in the section, must bear the same sense in the three cases. In each the statute requires the same residence, though for longer or shorter periods. The difference is in the time, not in the kind, of residence. And in each the residence must be actual and *bona fide; animo manendi.* No mere pretense of residence, no passing visit, no temporary presence, no assumption of residence here *pro hac vice* only, nothing short of actual abode here, with intention of permanent residence, will fill the letter or the spirit of the statute. *Hall v. Hall,* 25 Wis., 600; *Williamson v. Parisien,* 1 Johns. Ch., 389; *Case v. Clarke,* 5 Mason, 70. The residence must be such as, continuing for a year, would make a man a qualified elector of the state. *Shelton v. Tiffin,* 6 How., 163. "The legislature was legislating for the citizens of this state, not for others." *Winship v. Winship,* 16 N. J. Eq., 107. See *Jarvais v. Moe,* 38 Wis., 440; *Lyon v. Lyon,* 2 Gray, 367; *Re Miller's Estate,* 3 Rawle, 312; *Fry's Case,* 71 Pa. St., 302; *Brown v. Brown,* 14 N. J. Ch., 78; *Thompson v. State,* 28 Ala., 12; *Hinds v. Hinds,* 1 Iowa, 36; *Smith v. Smith,* 4 G. Greene, 266.

Accepting the respondent's own statement, we cannot but hold that she came to this state for the purpose of prosecuting this suit only, without intention of permanent residence here; and that such residence as she has acquired does not entitle her to sue for divorce here under the statute.

But it is contended by her counsel, and there are cases to support his position, that the domicil of the wife follows the domicil of the husband; that, therefore, during the appellant's ten years' abandonment of her and cohabitation with his paramour, his domicil here was hers in construction of law; and that she, abiding all those years at their former domicil in New York, was yet all the while a legal resident of this state within the statute of divorce. We must hold such a theory excluded by the statute, requiring actual residence here of the plaintiff, whether husband or wife. If it had been the intention of the statute that a wife, suing a resident husband for divorce, need not be herself a resident, we take it that the statute would in some way have indicated such intention, now literally excluded by the language used.

Doubtless for certain purposes the domicil of the husband is the domicil of the wife. That rule, however, goes upon the unity of husband and wife; and very generally, if not always, implies continuing, though temporarily interrupted, cohabitation. It excludes, or should exclude, permanent separation. Permanent separation implies separate domicils of husband and wife. If the rule were to be applied to cases of desertion, it would imply something like an absurdity. The weight of authority is against the application of the rule, as applied to cases of divorce, when the parties are actually living in different jurisdictions. *Ditson v. Ditson*, 4 R. I., 87; *Harteau v. Harteau*, 14 Pick., 181; *Payson v. Payson*, 34 N. H., 518; *Hopkins v. Hopkins*, 35 id., 474; *Harding v. Alden*, 9 Greenl., 140; *Yates v. Yates*, 13 N. J. Ch., 280; *Schonwald v. Schonwald*, 2 Jones' Eq., 367; *Jenness v. Jenness*, 24 Ind., 355. The question cannot be considered an

open one in this court. *Hubbell v. Hubbell, supra; Phillips v. Phillips*, 22 Wis., 256; *Shafer v. Bushnell*, 24 id., 372; *Craven v. Craven*, 27 id., 418; and other cases in this court.

We are therefore of opinion that the respondent was in no sense a resident of this state within the meaning of the statute, at the time of the commencement of her suit.

But the question remains, whether the pleadings raise the issue of her residence. Her want of residence under the statute is clearly a personal disability, not affecting the present right of action, but only the present right to prosecute the action; a disability which might be cured: clearly matter of abatement, not of bar. "Whenever the subject matter of the defense is that the plaintiff cannot maintain any action, at any time, whether present or future, in respect of the supposed cause of action, it may and usually must be pleaded in bar: but matter which merely defeats the present proceeding, and does not show that the plaintiff is forever concluded, should in general be pleaded in abatement." 1 Chitty's Pl., 446. "All declinatory and dilatory pleas in equity are properly pleas, if not in abatement, at least in the nature of pleas in abatement; and, therefore, in general, the objections founded thereon must be taken *ante litem contestatam* by plea, and are not available by way of answer, or at the hearing." Story's Eq. Pl., § 708. So Lord REDESDALE distinguishes pleas "that the plaintiff is not entitled to sue by reason of some personal disability," and that "the plaintiff has no interest in the subject, or no right to institute a suit concerning it," from pleas in bar, and calls them pleas to the person of the plaintiff. Mitford's Pl., 220.

And the distinction is not one of form merely, but of substance. For, generally, judgment for the defendant on pleas in abatement, abates the action only; on plea in bar, bars the cause of action everywhere and forever. In the present case, judgment against the respondent for want of residence within

the statute, should not operate to bar another action here, if she should have acquired a residence; or elsewhere, at any time or under any circumstances.

The code does not touch the distinction between defenses in abatement and defenses in bar, or the legal effect of judgments upon them. It does indeed modify the manner, form and time of putting in such defenses, but does not confound them or their consequences. Formerly, pleas in abatement and pleas in bar must have been separately and successively pleaded in that order; now, matter of abatement and matter of bar may be set up as separate defenses in the same answer. *Freeman v. Carpenter*, 17 Wis., 126. Whether they may be successively pleaded and tried; or, being pleaded together, may be separately tried, are questions not now before us.

If certain matters in abatement are apparent in the complaint, they are ground for demurrer under the code. But if matter in abatement, not apparent in the complaint, be relied on as a defense, it must be specially pleaded in the answer. Ch. 125, secs. 5, 8, R. S.

A general denial is a plea in bar, not broader at least than the general issue at common law, and cannot raise any defense by way of abatement. *Martin v. Pugh*, 23 Wis., 184; *Sanford v. McCreedy*, 28 id., 103; *Ewen v. Railway Co.*, 38 id., 613. Judgment for the defendant upon a general denial, is a general judgment: a bar to all future actions for the same cause. And it would be a cruel abuse that it should go upon a defense in abatement, concealed *in gremio*. The code intended no such perversion of justice. And it is well settled in this court, that matter in abatement, not apparent in the complaint, must, like other special defenses, be specially pleaded in the answer. *Freeman v. Carpenter*, *Sanford v. McCreedy*, *Ewen v. Railway Co.*, *supra; Moir v. Dodson*, 14 Wis., 279; *Cord v. Hirsch*, 17 id., 403; *Kimball v. Noyes*, id., 695; *Harbeck v. Southwell*, 18 id., 418; *Bevier v. Dillingham*, id., 529; *Wilson v. Jarvis*, 19 id., 597; *Robbins v.*

*Deverill*, 20 id., 142; *Supervisors v. Hackett*, 21 id., 613; *Lefebre v. Utter*, 22 id., 189; *Quinn v. Quinn*, 27 id., 168; *Noonan v. Orton*, 34 id., 259; *Wittman v. Watry*, 37 id., 238; *Smith v. Peckham, ante*, p. 414. This point was over-looked at the bar, and therefore not passed upon by the court, in *Hall v. Hall*, 25 Wis., 600.

There is a strong analogy between this question and questions of jurisdiction in the federal courts, resting on the citizenship of parties. In those courts, all objections founded on the citizenship of the parties must be specially pleaded in abatement, or they are waived. *Conard v. Insurance Co.*, 1 Pet., 386; *D' Wolf v. Rabaud*, id., 476; *Sheppard v. Graves*, 14 How., 505.

The appellant contends that the defense here is in the nature of a plea to the jurisdiction. We do not think so, but need not discuss the point. For by all the authorities the rule equally applies to pleas to the jurisdiction, which, if not strictly pleas in abatement, are in the nature of pleas in abatement. See Chitty, Story, Mitford, *ubi supra*.

The defense, therefore, that the respondent was not a resident of the state, though well founded in fact, was inadmissible under the pleadings in this case.

II. We might have been disposed to hold, under subd. 3 of sec. 13, that where a continuing adulterous intercourse is maintained for over three years, particular acts of adultery within three years of suit brought might be considered as discovered within the three years, and so found a suit for divorce. But the question does not appear to be an open one.

The section in our statute was copied in 1849 from the revised statutes of New York adopted in 1829; with the mere difference that in subd. 3, *three* years are substituted for *five* in New York. In 1815, in *Williamson v. Williamson*, 1 Johns. Ch., 488, KENT, C., held, in the absence of any statutory rule but in analogy to the civil law, that a delay in suing for a divorce for five years after notice of an adulterous inter-

Dutcher vs. Dutcher.

course still continuing when the bill was filed, was a bar; on the presumption of condonation. The New York subdivision was expressly intended to incorporate that rule in the statute. See reviser's notes, 5 Edmunds Stats. at Large, 401. In *Valleau v. Valleau*, 6 Paige, 207, decided in 1836, the construction of the subdivision was necessary to the decision of the case. After stating the rule of *Williamson v. Williamson*, and saying that the principle of that case was incorporated into the revised statutes, WALWORTH, C., proceeds to say:

"The revisers, in their report to the legislature, refer to this decision as containing the principles which they had introduced into the revised statutes on this subject. In conformity with that decision, therefore, I must declare the true construction of the third subdivision of the 42d section of the article of the revised statutes relative to divorces dissolving the marriage contract, to be, that if the complainant knows that his wife has contracted a second marriage and continues openly to cohabit with such second husband, or that she is living in open and continued adultery with another person even without the usual form of a marriage, the right to file a bill for a divorce for such adultery will be barred after the expiration of five years, although such cohabitation or adulterous intercourse is continued down to the time of the commencement of the suit. And where such continued adultery is open and notorious, the complainant must also satisfy the court that, by reason of his absence from the country or otherwise, he was not aware of the fact of such continued cohabitation and adultery until within five years from the time of the commencement of the suit."

We cannot find that the decision of *Valleau v. Valleau* has ever been questioned in New York, before or since we adopted the section here. It is therefore conclusive upon this court. We took the statute with its construction. *Draper v. Emerson*, 22 Wis., 147.

Again accepting the respondent's own statement, she ap-

pears chargeable with notice of the appellant's adulterous intercourse commenced in New York nearly twelve years ago, and thence continuously maintained to the bringing of this suit. So chargeable with notice, she could not set up specific acts in the continuing adulterous intercourse as ground of divorce.

But the question remains, whether the appellant could avail himself of this defense under his general denial. We are quite clear that he could not.

The continuous relation between the appellant and his paramour does not appear in the complaint. It is therefore new matter in defense to be pleaded by the defendant. Generally, a general denial only traverses matters pleaded in the complaint.

As has been seen, sec. 13 goes upon condonation, expressed or implied; the statutory limitation of subd. 3 going upon condonation implied by lapse of time. And where the bar of the statute does not appear in the complaint, it must always be pleaded. *Orton v. Noonan*, 25 Wis., 672; *Heath v. Heath*, 31 id., 223; *Barden v. Supervisors*, 33 id., 445; *Tarbox v. Supervisors*, 34 id., 558. And so express condonation cannot be shown under a mere denial, but must be expressly set up as a defense. *Wood v. Wood*, 2 Paige, 108; *Smith v. Smith*, 4 id., 432.

The defense, therefore, that the respondent had discovered the appellant's adultery more than three years before she brought this suit, and is therefore barred, though apparently well founded in fact, was inadmissible under the pleadings in this case.

It is perhaps not inappropriate to remark here that, as a rule, a general denial under the code is a mere traverse, in bar, of the facts pleaded in the complaint; and that the uses often claimed for it, as admitting special defenses in abatement or in bar, are contrary to the letter and spirit of the code; hiding, rather than disclosing, the grounds and facts relied on in defense.

III. These views would, in ordinary cases, dispose of this appeal by affirmance of the judgment of the court below. But in cases of this nature, we cannot consider our duty ended by determining the strict rights of the parties, between themselves, under their pleadings and proofs, when these support a divorce apparently unwarranted by the statute. Questions of public policy are involved in divorce, which, after grave consideration, we think that we are not at liberty to disregard.

In *Campbell v. Campbell*, 37 Wis., 206, it is said that the jurisdiction of divorce is a peculiar jurisdiction, because the marriage relation is a peculiar relation. It might have been added, with equal truth, and for the same reason, that the statute of divorce is a peculiar statute.

We regret that we have not access to the statute under which *Williamson v. Williamson* was decided by KENT, C. That great master of equity held that statute to be permissive, subject to a sound judicial discretion. He says:

"I cannot think the statute intended that the party injured should be entitled to come, *at any time*, and *in every case*, and to put the cause on the single dry question, Has an act of adultery, in judgment of law, been committed? Nothing could operate more unjustly than such a construction. The statute says, that, after the truth of the adultery charged shall have been ascertained, 'it shall be lawful for the court' to decree a dissolution of the marriage. This language may and ought to be understood as leaving to the court the exercise of that sound discretion which the nature of the case, and the principles of equity, might require. The general rule of the *English* jurisprudence, on this subject, must be considered as applicable, under the regulations of the statute, to this newly-created branch of equity jurisdiction. It is not to be supposed that the statute intended, in all cases of adultery charged and proved, that the court should be absolutely bound (no matter under what circumstances) to grant to the prose-

cutor the effect of a suit carried on for his own benefit. It is to be recollected that a bill for a divorce is not a public but a private prosecution, brought at the instance of the party aggrieved, and subject to his control." And again: "I think enough has been said to show that a decree for a divorce is not to be taken as *of course*, though the fact of adultery may have existed; and I cannot but persuade myself that when the statute created a jurisdiction in this court, for the cautious and limited exercise of the power of divorce, it intended that those settled principles of law and equity on this subject, which may be considered as a branch of the common law, should be here adopted and applied."

It has been seen that this case was in the minds of the revisers in New York, and influenced them in framing the statute of divorce from which sec. 13 in our statute is copied, and on which our whole statute is largely modeled. And, accordingly, we find the New York statute in terms permissive both as to judgments of nullity and judgments of divorce. In our statute, the provisions for judgments of nullity or affirmance of marriage are in terms obligatory, and for judgments of divorce in terms permissive throughout; a distinction of language, in kindred sections, in the same statute, pregnant with meaning.

The rule that *may* means *shall* in statutes where the public or individuals have a claim *de jure* to the exercise of the power conferred, is not overlooked. *Cutler v. Howard*, 9 Wis., 309. But we have the great authority of Chancellor KENT for holding permissive words in the grant of this peculiar jurisdiction, to imply a sound judicial discretion in its exercise; strongly fortified here by the abrupt transition of the statute from uniformly obligatory words in one branch of the jurisdiction conferred, to uniformly permissive words in the other; an antithesis precluding oversight and implying design. This view is the stronger, that there was no right of divorce before the statute; that the statute gives divorce, as a

right, only so far as the right is to be implied from the grant of jurisdiction to the courts, in terms permissive only; the public interest being concerned that the exercise of the jurisdiction should be subject to a sound judicial discretion. See *Winship v. Winship, Williamson v. Williamson, supra; Barrere v. Barrere,* 4 Johns. Ch., 187; *Van Veghten v. Van Veghten,* id., 501; *Smith v. Smith,* 13 Gray, 209; *Smith v. Smith,* 4 Paige, 432; *People v. Dawell,* 25 Mich., 247; *Bennett v. Bennett,* 28 Cal., 599.

We do not mean to put the policy of the courts above the policy of the legislature; or to hold that the courts should exercise any discretion to refuse divorces authorized by the statute. But we do hold that, whatever apparent claim there may be to divorce, resting on mistake or collusion of the parties or other accident, the courts of this state are vested by the statute with judicial discretion to withhold judgment of divorce, in cases not within the statute upon their merits. We understand just such a discretion to have been claimed by the chancellor in New York in *Smith v. Smith, supra,* under the statute on which ours is modeled, and before it was adopted here.

So, too, SHAW, C. J., speaking of an action for divorce, says: "If this were a mere private action or suit, in which the personal rights of the parties alone were concerned, there would be a strong reason for applying the doctrine of estoppel to the act of the husband in resisting the present motion of the wife. But a suit for divorce is of a very different character; it is one in which the public have an interest, and in the conduct and result of which the best interests of society are concerned." And the court therefore refused to apply the doctrine of estoppel, as in ordinary cases. *Smith v. Smith,* 13 Gray, 209.

It concerns the public welfare that the state should not be made a free mart of divorce for strangers; and that, amongst her own people, divorce should not become matter of free will as much as marriage; a personal right independent of public

right and inconsistent with public welfare. Divorces without the letter and spirit of the statute in fact, but made to look within it by design or mistake or accident, are frauds upon the statute and offenses against public policy. And it is the duty of the courts, *ex officio*, as WALWORTH, C., has it, to look closely into actions for divorce, and to direct inquiries into the facts, when necessary, and finally to deny all divorces which would be abuses of the statute.

This case evidently proceeded in good faith upon a misconstruction of the statute; but the judgment, if affirmed, would be none less in legal sense a fraud upon the statute.

We regret that it is our duty to reverse it; but we are not sorry that the occasion of enforcing this rule places it above all possibility of bias, because all sympathy must be with the respondent.

It appears quite conclusively that the respondent had not such residence here as would support her right to bring the suit in the court below. It appears also that she had notice of the adulterous cohabitation of the appellant more than three years ago; but this does not appear so conclusively, and she may be able to make a better case in another suit. We therefore think it right that the judgment against her should be in abatement, and not in bar. The judgment will therefore be reversed, with directions to the court below to permit the answer to be amended, or to consider it as amended on the trial, so as to raise the defense in abatement; and to dismiss the complaint upon the sole ground of the respondent's non-residence at the commencement of the suit; the costs in this court and the court below to be of course paid by the appellant.

We trust that this judgment will not be received as license for loose pleading or practice in actions for divorce. It is only when the public interest is involved, that the rules governing other cases will be relaxed in cases of divorce. As between the parties, the rules of pleading and practice will be

enforced as in other cases. *Barker v. Dayton*, 28 Wis., 367.

*By the Court.* — Judgment reversed, and cause remanded for judgment in the court below in accordance with this opinion.